UNITED STATES of America, Appellee,

v.

$7,850.00 IN U.S. CURRENCY, Defendant,

James S. Goodwin, Appellant.

No. 92–2893.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1993.

Decided Oct. 12, 1993.

Toni Rodgers, Atlanta, GA, for appellant.

Lonnie F. Bryan, Asst. U.S. Atty., Minneapolis, MN, argued (Mary Jo Madigan, Asst. U.S. Atty., on the brief), for appellee.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Senior Circuit Judge.

This is a civil forfeiture action brought by the United States pursuant to 21 U.S.C. § 881(a)(6) (1982) against $7,850.00 in United States currency.[1] The money was seized from the claimant, James S. Goodwin. The parties filed cross motions for summary judgment; the district court granted the government's motion, finding the government had shown probable cause to forfeit, and entered judgment against the claimant.[2] We vacate the grant of summary judgment in favor of the government, and vacate as well the denial of summary judgment filed by the claimant. We remand for further proceedings.

In a forfeiture proceeding, the government bears the initial burden of establishing probable cause to connect the property to be forfeited with some form of criminal wrongdoing. *United States v. $91,960.00*, 897 F.2d 1457, 1462 (8th Cir.1990). Once probable cause is established, the burden shifts to the claimant to show by a preponderance of evidence that the property is not subject to forfeiture or that a defense to forfeiture applies. *One Blue 1977 AMC Jeep CJ–5 v. United States*, 783 F.2d 759, 761 (8th Cir.1986). Goodwin argues that the district court erred in concluding that the government met its burden of showing probable

---

1. 21 U.S.C. § 881(a)(6) (1982) provides, in pertinent part:

 The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 . . . .

 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

2. The court also entered a default judgment against all unknown persons and entities having an interest in the monies seized.

cause to support the forfeiture. Goodwin initially argues that the currency was illegally seized and that under the facts of the case probable cause to forfeit the monies does not exist.

█ Because forfeiture proceedings are quasi-criminal in character, the exclusionary rule applies barring evidence obtained in violation of the Fourth Amendment. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965). The fact that the monies may have been illegally seized does not immunize them from forfeiture. *United States v. $88,500.00*, 671 F.2d 293, 297 (8th Cir.1982); *see also INS v. Lopez–Mendoza*, 468 U.S. 1032, 1039–40, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984) (the "identity" of defendant is not itself suppressible as fruit of unlawful arrest). However, the government must show with untainted evidence that probable cause to forfeit exists. *United States v. $31,828.00*, 760 F.2d 228, 230 (8th Cir.1985).

*Facts*

On February 26, 1991, Goodwin purchased a one-way ticket to Omaha, Nebraska from Northwest Airlines at the Minneapolis/St. Paul International Airport. He did not have a reservation, did not carry any luggage, and paid for the ticket with cash. He was not carrying any identification. After Goodwin left, the ticket agent contacted the Airport Detail Police, explained the circumstances of the sale, and advised the officers that Goodwin was carrying a large "wad" of money. Based on the ticket agent's description of Goodwin's appearance, the officers ran a Narcotics and Dangerous Drugs Information System (NADDIS) query on Goodwin, which found a match on his physical description. NADDIS report # 13370 indicated that Goodwin had a supplier of cocaine in Omaha, Nebraska.

According to an affidavit submitted by the government, the officers proceeded to the departure gate from which Goodwin's flight was scheduled to depart and located Goodwin. One of the officers (Officer Moss) recognized Goodwin from surveillance conducted at the airport the previous day. The officers advised Goodwin that he was not under arrest. They asked him why he was in town; Goodwin replied that it was none of their business and that he had been in town for one or two days. Officer Moss then asked Goodwin if he had been at the airport the previous day. Goodwin initially stated he had not, but recanted when Officer Moss told him that he had been seen. When asked if he was carrying a large sum of cash, Goodwin initially replied "no," then stated he had a few hundred dollars, then around $1,800.00, and finally that he had less than $10,000.00.

The government states that after this discussion, Goodwin voluntarily removed from his pocket a bundle of money totalling approximately $2,900.00, counted it, and then returned it to his pocket. At this point, a DEA officer *reached* into Goodwin's pocket and took the currency. (Government's response to claimant's request for admission no. 6 dated 11/22/91.) According to the investigatory report appended to the affidavit of Jerry Kramer, a Drug Enforcement Administrative Task Force Officer, Officer Moss "demanded" to see the rest of the money. Goodwin then removed from his left front jacket pocket an envelope containing a bundle of money totalling $4,950.00. The officers told Goodwin that they were going to subject the money to a dog sniff. After giving Goodwin a receipt, the officers wrapped the money in newspaper and hid it in the men's restroom. While Goodwin was present, the detection dog located and bit at the money, indicating the currency had recently been in contact with controlled substances. Goodwin was allowed to depart on his flight to Omaha, Nebraska, but without the money.

*The Involuntary Seizure*

█ Our initial discussion must be focused on the question of whether or not the currency was illegally seized. In granting summary judgment, the district court found that Goodwin voluntarily gave the currency to the officers. In support of this conclusion, the court cites the claimant's response to the government's request for admission number 23. This is clear error. Admission number 23 requested that Goodwin admit that the officers gave him a DEA 12 receipt for money in the amount of $7,850.00. We have examined all of Goodwin's responses to the

government's request for admissions and find no admission by claimant that he voluntarily gave the officers the initial $2,900.00 or the subsequent $4,950.00 contained in an envelope.

In fact, the record establishes the contrary. The government admitted that after Goodwin showed the initial $2,900.00 to the agents, Goodwin returned it to his pocket. Thereafter, the agent "reached" into Goodwin's pocket and seized it.[3] As to the seizure of the $4,950.00 contained in the envelope, the government's own investigatory report appended to the affidavit of DEA Agent Kramer expressly states, "Investigator Moss *demanded* to see the rest of the money, at which point Goodwin removed an envelope from his left front jacket which contained approximately $4,950.00." (Emphasis added.) Goodwin contends that he removed the envelope only after the officer touched his pocket and demanded that he "unveil the rest of the money by way of intimidation."

The facts demonstrate that Goodwin did not voluntarily give the currency to the officers. It is clear that the police officers impermissibly conveyed the "message that compliance with their requests [was] required." *See Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). We therefore find the district court's finding of consent to be clearly erroneous.

■ Absent valid consent, the government must show probable cause to justify the seizure of the currency. On this appeal, the government does not argue probable cause existed, relying solely on the district court's finding of voluntary consent.

■ Generally, police officers must have a warrant before they can seize a person's property. *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). There are exceptions to the warrant requirement,[4] but even assuming one of those applies, at a minimum the officials must have probable cause to believe that the

item seized is contraband or evidence of a crime. *See id.; Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Probable cause means "a fair probability that contraband or evidence of a crime will be found." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

■ Here, the facts known to the officers before seizing the currency included the following: Goodwin had purchased a ticket with cash and carried no luggage and no identification; the ticket agent saw a large "wad" of cash in his possession; a NADDIS report indicated that Goodwin had a heroin supplier in Omaha; Officer Moss had seen Goodwin at the airport the previous day, and when confronted, Goodwin initially lied about that fact; Goodwin answered other questions evasively; and Goodwin removed one bundle of money from his pocket and counted it for the officers before returning it to his pocket.

In examining those facts, we conclude that the police officers did not have probable cause to seize the currency from Goodwin's pockets. Obviously, there was no reason to believe the currency was itself contraband or contained contraband. *Cf. Texas v. Brown,* 460 U.S. 730, 743–44, 103 S.Ct. 1535, 1544, 75 L.Ed.2d 502 (1983); *United States v. Prandy–Binett,* 995 F.2d 1069, 1071 (D.C.Cir. 1993). Besides Goodwin's somewhat suspicious behavior, the only evidence the officers had at the time that linked Goodwin to possible involvement with drugs was the NADDIS report, and courts have questioned the reliability of these reports. *See, e.g., United States v. $215,300.00,* 882 F.2d 417, 419 n. 2 (9th Cir.1989), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990); *United States v. Prim,* 698 F.2d 972, 973–74 & 977 (9th Cir.1983).

Although the government argued to the district court that the seizure of the currency was appropriate as an investigative detention

---

3. Goodwin's request for admission stated: "Admit that the officer stuck his hand in James Goodwin's pocket, without his consent and then instructed Goodwin to pull the money out and to count it." The government responded: "Admit that Goodwin removed the defendant from his pocket, showed it to the officers and returned it to his pocket, at that point the officers removed the defendant from Goodwin's pocket."

4. *E.g.,* exigent circumstances, search incident to arrest, automobile search, plain view. *See Texas v. Brown,* 460 U.S. 730, 735–36, 103 S.Ct. 1535, 1539–40, 75 L.Ed.2d 502 (1983).

1359

justified by reasonable, articulable suspicion,[5] it did not brief or argue this claim on appeal. It relied solely on the district court's erroneous finding of a consensual search. At this time we do not pass or comment in any way on any possible theories the government raised at the district court level which were not passed upon by the district court. We hold simply that the district court's finding of a consensual seizure of the monies was clearly erroneous. On this basis the grant of summary judgment in favor of the government and the denial of the claimant's motion for summary judgment are vacated. The case is remanded to the district court for further proceedings. The parties are at liberty to renew their respective motions and urge whatever grounds, other than those now decided, as to the seizure of the monies. In the event there is a further appeal by any of the parties, the clerk is directed to lodge the appeal before this same panel of judges.

It is so ordered.

5. *See Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *U.S. v. $53,082.00*, 985 F.2d 245 (6th Cir.1993).