453 S.E.2d 307

Lawrence R. FRAIL, Prosecuting Attorney of Raleigh County, on Behalf of The West Virginia Department of Public Safety, Appellee,

v.

$24,900.00 IN UNITED STATES CURRENCY, Alejandro Palmero and Minerva Rivera, Appellants.

No. 22223.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Filed Dec. 12, 1994.

Mark M. Neil, Asst. Pros. Atty., Beckley, for appellee.

Stanley I. Selden, Beckley, for appellants.

MILLER, Justice:[1]

This case involves a civil forfeiture proceeding which was instituted against the appellants, Alejandro Palmero and Minerva Rivera, pursuant to the West Virginia Contraband Forfeiture Act (WVCFA), W.Va. Code, 60A–7–701 *et seq.*

At approximately 8:20 p.m. on August 3, 1993, Alejandro Palmero was driving his 1989 Mazda on the West Virginia Turnpike in route from Cleveland, Ohio, to Florida.[2] He was stopped by a State trooper for making an allegedly improper lane change. Palmero told Trooper First Class Samuel B. Lake of the West Virginia Department of Public Safety that his address was 3450 West 98th Street, Cleveland, Ohio 44102. However, the address on his driver's license was 13100 Southwest 53rd Street in Miami, Florida.

Palmero consented to a search of the vehicle, which was also occupied by a Mr. Felix Saborit. During this search, Trooper Lake located $24,600.00 in United States currency in a black, suitcase-like bag. The currency was packaged in approximately twenty-five (25) envelopes in two (2) bundles and bound by rubber bands. Palmero said the money was his and explained that he had recently sold property in Cleveland for $28,000.00. After receiving a check for that amount, Palmero said he deposited it in his credit union account in Cleveland and subsequently withdrew the cash found in the car. Mr. Palmero offered to call his girlfriend, Miner-

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

2. The facts stated are contained in the petition for forfeiture filed by the State.

va Rivera,[3] whom he said could forward paperwork that would substantiate his claims as to the origins of the cash.

After the money was discovered, a drug-sensitive police dog inspected the vehicle but did not indicate the presence of controlled substances in the car. However, the Petition for Forfeiture states that "the drug canine did alert positively for controlled substances as to the United States currency found in the black bag." Moreover, at some point after the initial seizure of the currency, it was learned that Palmero was on bond from a federal indictment in Ohio for conspiracy to distribute cocaine.

In addition to the $24,600.00 found in the black bag, Mr. Saborit had $497.00 in United States currency in his possession, along with a beeper/pager, all of which apparently belonged to Mr. Palmero. According to allegations in the Petition for Forfeiture, Mr. Saborit did not understand English well and did not appear to know how to operate the beeper. Mr. Palmero agreed to give Mr. Saborit $197.00 of the $497.00 so that Mr. Saborit could arrange for lodging and transportation back to Cleveland, Ohio. The remaining $300.00, together with the $24,600.00 in the black bag, were seized on the ground that the currency is subject to seizure and forfeiture under the WVCFA as money used for or intended to be used in exchange for controlled substances.

On August 27, 1993, a Petition for Forfeiture was filed in the Circuit Court of Raleigh County by Lawrence R. Frail, Prosecuting Attorney of Raleigh County, acting on behalf of the West Virginia Department of Public Safety. A notice of the Petition for Forfeiture, as well as the actual Petition for Forfeiture, was sent to Mr. Palmero by certified mail, return receipt requested, at his Miami, Florida, address and to his Cleveland, Ohio, address. Notice was also given by order of publication published in the local newspaper, the *Register/Herald,* in compliance with the WVCFA, W.Va.Code, 60A–7–705(b).[4] Palmero did not respond to the Petition for Forfeiture.[5]

By order entered on October 13, 1993, the circuit court found "[t]hat probable cause to seize said Respondents' property existed at the time of its seizure ... in that the Respondents' property was money used for or intended to be used in exchange for controlled substances." Thus, the court ordered that the $24,900.00 owned and possessed by Alejandro Palmero was forfeited to the State of West Virginia.

The appellants now challenge the constitutionality of the forfeiture, arguing that the State (1) lacked probable cause to institute the forfeiture proceeding, and (2) failed to provide Palmero with proper notice of the forfeiture proceedings. We agree with the appellants' arguments with regard to the lack of probable cause, and, for this reason, we decline to address the notice argument. We vacate the judgment order entered by the circuit court.

### I.

■ In order to discuss the probable cause question it is necessary to outline some of the salient provisions of the WVCFA. West Virginia Code, 60A–7–703, sets out the objects that are subject to forfeiture and the

---

3. The record is unclear as to Minerva Rivera's status as Mr. Palmero's girlfriend or wife. Regardless, she is a party to this case because she asserts an interest in the $24,900.00. The State does not assert the appellant's lack of standing to challenge the forfeiture proceedings.

4. West Virginia Code, 60A–7–705(b) (1988), provides, in part:

 If no owner or possessors, lienholders or holders of a security interest be found, then such service may be by Class II legal publication in accordance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area shall be the county wherein such property was located at the time of seizure and the county wherein the petition for forfeiture is filed.

5. However, his attorney did comply with the requisite notice and appeal provisions of W.Va. Code, 60A–7–705(i), which state:

 An appeal of a decision of the circuit court concerning a forfeiture proceeding brought pursuant to this chapter must be filed within one hundred twenty days of the date of entry of the final appealable order. The appellant shall be required to give notice of intent to appeal within thirty days of the entry of such appealable order.

persons authorized to seize property.[6] Specifically, W.Va.Code, 60A–7–703(a)(6), provides that moneys, negotiable instruments, and other things of value furnished or intended to be furnished in violation of the WVCFA in exchange for a controlled substance, and all proceeds traceable to such exchange, are subject to forfeiture.[7]

■ Moreover, W.Va.Code, 60A–7–704(b)(4), allows property which is subject to forfeiture to be seized without process if there is probable cause to believe that the property was used, or intended for use, in violation of the WVCFA.[8] W.Va.Code, 60A–7–704, also permits forfeiture without process being issued by a court (1) if the seizure is incident to a lawful arrest or a search or inspection warrant; (2) the property seized is subject to a prior judgment in favor of the state in a forfeiture proceeding; and (3) the appropriate person has probable cause to believe the property is dangerous to health or safety.[9]

We have not had occasion to discuss civil forfeitures made pursuant to the WVCFA, which was passed in 1988. It bears some substantive similarity to the federal counterpart, the Comprehensive Drug Abuse Prevention and Control Act, which was originally enacted in 1970. Its civil forfeiture provision, 21 U.S.C. § 881(a)(6)[10] is similar to that contained in W.Va.Code, 60A–7–703(a)(6).[11] Under 21 U.S.C. § 881(b)(4), a seizure of property may be made without process if there is probable cause to believe that the property has been used, or is intended to be used, in violation of this subchapter.[12] This

---

6. Section 703(b) terms such individuals as "appropriate persons" and refers to W.Va.Code, 60A–5–501, which lists members of the department of public safety, any sheriff or deputy sheriff, and municipal officers.

7. The pertinent text of W.Va.Code, 60A–7–703(a)(6) (1988), is:

(a) The following are subject to forfeiture: All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished in violation of this chapter by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys, negotiable instruments and securities used, or which have been used, or which are intended to be used to facilitate any violation of this chapter: Provided, That no property may be forfeited under this subdivision, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without his knowledge or consent; ....

West Virginia Code, 60A–7–703(a), also lists other types of property which may be subject to forfeiture.

8. West Virginia Code, 60A–7–704(b)(4) (1988), states that:

(b) Notwithstanding the provisions of subsection (a) of this section, seizure of property subject to forfeiture by the provisions of this article may be made without process if:

* * * * * *

(4) The appropriate person has probable cause to believe that the property was used or intended for use in violation of this chapter.

9. West Virginia Code, 60A–7–704(b)(1)–(3), provides:

(b) Notwithstanding the provisions of subsection (a) of this section, seizure of property subject to forfeiture by the provisions of this article may be made without process if:

(1) The seizure is incident to a lawful arrest or pursuant to a search under a search warrant or an inspection warrant;

(2) The property subject to seizure has been the subject of a prior judgment in favor of the state in a forfeiture proceeding based upon this article;

(3) The appropriate person has probable cause to believe that the property is directly or indirectly dangerous to health or safety; ....

10. 21 U.S.C. § 881(a)(6) states:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

* * * * * *

(6) All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

11. For the text of W.Va.Code, 60A–7–703(a)(6), see note 7, supra.

12. 21 U.S.C. § 881(b)(4) provides:

(b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process

language is virtually identical to that found in W.Va.Code, 60A–7–704(b)(4).[13]

Our forfeiture statute contains a detailed procedure that the State must follow in initiating a civil forfeiture proceeding. *See* W.Va.Code, 60A–7–705. There is no such detailed forfeiture procedure in the federal law under 21 U.S.C. § 881.[14] The general federal forfeiture statute is found in 19 U.S.C. § 1615, which places the burden to establish probable cause, where there is no process, on the government, by stating that "... probable cause shall be first shown for the institution of such suit or action, to be judged of by the court...."

█ Recently, in *United States v. $191,-910.00 in United States Currency*, 16 F.3d 1051 (9th Cir.1994), the Ninth Circuit Court of Appeals made a detailed analysis of this language and concluded "that 19 U.S.C. § 1615 requires the government to have probable cause at the time it institutes forfeiture proceedings." 16 F.3d at 1066. We have no precise counterpart to 19 U.S.C. § 1615. However, under our procedural forfeiture statute, W.Va.Code, 60A–7–705(a)(4), the petition for forfeiture "shall be verified by oath or affirmation of a law-enforcement officer ... responsible for the seizure or the prosecuting attorney." This section goes on

to state what must be contained in the petition, which includes "a statement of facts upon which probable cause for belief that the seized property is subject to forfeiture pursuant to the provision of this article is based."[15] Thus, it is clear that under W.Va. Code, 60A–7–705(a)(4), probable cause to believe that the property seized is subject to the forfeiture provisions of W.Va.Code, 60A–7–701 *et seq.*, must exist at the time the petition for forfeiture is filed.

█ It is clear that within the context of a civil forfeiture proceeding, probable cause requires more than a mere suspicion; there must be reasonable grounds for believing that the property is subject to forfeiture. In *$191,910.00 in United States Currency, supra*, the Ninth Circuit discussed what was meant by probable cause in a drug forfeiture case to show an initial violation of the drug law:

> The standard of probable cause to support a forfeiture is similar to that required for a search warrant. See [*United States v. One 56–Foot Motor Yacht Named the*] *Tahuna*, supra, 702 F.2d [1276] at 1281 [ (9th Cir.1983) ]. As the requirement is traditionally stated, the government's belief that the property is subject to forfei-

issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

     \*    \*    \*    \*    \*    \*

(4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.

**13.** *See* note 8, *supra*, for the text of W.Va.Code, 60A–7–704(b)(4).

**14.** As earlier stated in note 12, *supra*, 21 U.S.C. § 881(b) refers to the Supplemental Rules for Certain Admiralty and Maritime Claims as being applicable to forfeiture proceedings. They are found in the Federal Rules of Civil Procedure A to F.

**15.** West Virginia Code, 60A–7–705(a)(4), states:

(4) A petition for forfeiture of the seized property shall be filed within ninety days after the seizure of the property in question. The petition shall be verified by oath or affirmation of a law-enforcement officer representing the

law-enforcement agency responsible for the seizure or the prosecuting attorney and shall contain the following:

(i) A description of the property seized;

(ii) A statement as to who is responsible for the seizure;

(iii) A statement of the time and place of seizure;

(iv) The identity of the owner or owners of the property, if known;

(v) The identity of the person or persons in possession of the property at the time seized, if known;

(vi) A statement of facts upon which probable cause for belief that the seized property is subject to forfeiture pursuant to the provisions of this article is based;

(vii) The identity of all persons or corporations having a perfected security interest or lien in the subject property, as well as the identity of all persons or corporations known to the affiant who may be holding a possessory or statutory lien against such property;

(viii) A prayer for an order directing forfeiture of the seized property to the state, and vesting ownership of such property in the state.

ture must be more than a mere suspicion but can be less than prima facie proof. See *United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.1984) (per curiam). We have held that the determination of whether probable cause exists to support a forfeiture must be based on the totality of the circumstances. No single factor is dispositive.

16 F.3d at 1071 (citation omitted). *See also United States v. One 1984 Cadillac,* 888 F.2d 1133 (6th Cir.1989); *United States v. Premises Known as 3639-2d St., NE, Minneapolis, Minn.,* 869 F.2d 1093 (8th Cir.1989); *United States v. Thompson,* 913 F.2d 1106 (4th Cir. 1990).

■ We utilized a similar standard for probable cause with regard to a search warrant in *State v. Worley,* 179 W.Va. 403, 409, 369 S.E.2d 706, 712 (1988):

Though it is impossible to define "probable cause" with mathematical precision, "it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527, 546 (1983). Our cases are to like effect. E.g., *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981); *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980).

Thus, in a forfeiture proceeding under W.Va. Code, 60A–7–701 *et seq.,* the State must have probable cause to believe that the property is subject to forfeiture, which means more than a mere suspicion, but less than prima facie proof.

■ Additionally, under 21 U.S.C. § 881(a)(6), which authorizes forfeiture of moneys, negotiable instruments, or other things of value, the property seized must be involved in a transaction or activity which is made illegal under that statute.[16] Consequently, the federal courts require that probable cause must be shown as to this fact. In *$191,910.00 in United States Currency,* the Ninth Circuit explained this additional probable cause requirement in a seizure case:

Probable cause to believe that the property is involved in *some* illegal activity is

not enough—the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes. The government brought this proceeding under a statute which renders money subject to forfeiture if it is (1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws. *See* 21 U.S.C. § 881(a)(6). Thus, the government must show that, at the time it brought this action, it had probable cause to believe that the money in Morgan's bags was used or intended to be used in a drug transaction.

16 F.3d at 1071 (citation omitted).

In *United States v. Borromeo,* 995 F.2d 23, 25 (4th Cir.1993), the Fourth Circuit Court of Appeals established that, in order to meet this probable cause standard, there must be a substantial connection between the seized property and the illegal activity which statutorily authorized its seizure. In *Borromeo,* the court found that there was probable cause to show that the defendant had engaged in illegal drug activity. However, the court concluded that the government had failed to establish that the property sought to be forfeited had a substantial connection to the illegal drug activity.

However, the government failed to adduce sufficient evidence showing a "substantial connection between the property [sought to be forfeited] and the criminal activity," as is required by our decisions in *United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989), and *United States v. $95,945.18 in U.S. Currency,* 913 F.2d 1106, 1110 (4th Cir.1990).

995 F.2d at 25.

In *United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 902, 903 (11th Cir.1985), the Eleventh Circuit Court of Appeals adopted the substantial connection test and explained its derivation in note 14:

**16.** For the text of 21 U.S.C. § 881(a)(6), *see* note 10, *supra.*

The "substantial connection" requirement appears not in the statute itself, but in the legislative history:

> Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a *substantial connection* between the property and the underlying criminal activity which the statute seeks to prevent.... Similarly, any moneys, negotiable instruments, or securities that were used or intended to be used to facilitate any violation of the Controlled Substances Act would be forfeitable only if they had some *substantial connection* to, or were instrumental in, the commission of the underlying criminal activity which the statute seeks to prevent.

Joint Explanatory Statement of Titles II and III of the Psychotropic Substances Act of 1978, Pub.L. No. 95–633, 92 Stat. 3768 (codified in scattered sections of 18 and 21. U.S.C.), *reprinted in* 1978 U.S.Code Cong. & Ad.News 9496, 9518, 9522 (emphasis added).

*See also United States v. One Parcel of Real Property,* 900 F.2d 470 (1st Cir.1990); *Onwubiko v. United States,* 969 F.2d 1392 (2d Cir.1992).

Our forfeiture statute, W.Va.Code, 60A–7–703(a)(6), contains language similar to that found in 21 U.S.C. § 881(a)(6) relating to the seizure of moneys, negotiable instruments, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of the law. It appears that our Legislature, in fashioning W.Va.Code, 60A–7–703(a)(6) after 21 U.S.C. § 881(a)(6), expected that our interpretation would follow that of the federal courts. We, therefore, conclude that the State, in forfeiting property under W.Va.Code, 60A–7–703(a)(6), is required to demonstrate that there is probable cause to believe there is a substantial connection between the property seized and the illegal drug transaction. This finding is in addition to the initial finding of probable cause that an illegal act under the drug law has occurred.

A recent case involving the sufficiency of the facts to constitute initial probable cause to seize money in a drug forfeiture case is *United States v. $7,850.00 in United States Currency,* 7 F.3d 1355 (8th Cir.1993). This case involved an individual named Goodwin, who purchased a one-way ticket to Omaha, Nebraska, from the Minneapolis/St. Paul International Airport. The court gave this factual summary:

> Here, the facts known to the officers before seizing the currency included the following: Goodwin had purchased a ticket with cash and carried no luggage and no identification; the ticket agent saw a large "wad" of cash in his possession; a NADDIS [Narcotic and Dangerous Drugs Information System] report indicated that Goodwin had a heroin supplier in Omaha; Officer Moss had seen Goodwin at the airport the previous day, and when confronted, Goodwin initially lied about that fact; Goodwin answered other questions evasively; and Goodwin removed one bundle of money from his pocket and counted it for the officers before returning it to his pocket.

7 F.3d at 1358.

The court then proceeded to its legal analysis of probable cause to seize the money:

> In examining those facts, we conclude that the police officers did not have probable cause to seize the currency from Goodwin's pockets. Obviously, there was no reason to believe the currency was itself contraband or contained contraband. Besides Goodwin's somewhat suspicious behavior, the only evidence the officers had at the time that linked Goodwin to possible involvement with drugs was the NADDIS report, and courts have questioned the reliability of these reports.

*Id.* (citations omitted).

■ The fact that a person is carrying a large amount of currency, and when questioned by authorities gives evasive answers to police officers, is ordinarily not sufficient to establish probable cause to seize the currency. In *United States v. $191,910.00 in United States Currency,* 16 F.3d 1051 (9th Cir.1994), an airplane passenger named Morgan passed his bags through the terminal's security. The operator noticed what ap-

peared to be a large quantity of currency. A supervisor was called, who asked what was in the bags. Morgan stated that they contained pamphlets or brochures. Police officers were subsequently notified, and they approached Morgan at the departure gate. Upon questioning, Morgan stated that he was a gemologist and was going to San Francisco to purchase some jade. He also stated it was not uncommon for people in the gem business to carry currency, and he was carrying approximately $20,000.00.

He was allowed to board the plane to San Francisco, but narcotic officers there were notified. They met Morgan at the airport and questioned him. He admitted he was carrying $15,000.00 in currency. They obtained his consent to take a quick look in his bags. They found two sealed envelopes in one bag which Morgan said were brochures. In another bag they found another sealed envelope addressed to an attorney, which Morgan said belonged to his client. Thereafter, he admitted that the envelope might contain $20,000.00 and that part was his and the rest belonged to his client. He explained that what he did not spend, he intended to give to his attorney. This was why the attorney's name was on the envelope. When asked by officers if they could open the envelopes, Morgan declined to give consent. At this point, the officers seized the bags and advised that they were being held for further investigation, including a sniff by a drug-sniffing dog. Morgan was given a receipt and left. Ultimately, the envelopes were opened and found to contain $191,910.00.

This was done after a dog sniff indicated the currency had a drug smell.[17]

In *$191,910.00 in United States Currency, supra,* the Ninth Circuit rejected the government's argument that since the seizure was of currency and not the person, there could be no claim that it had been unlawfully seized:

> For purposes of the Fourth Amendment, most courts treat the owner or possessor of the property as the defendant rather than the property itself.

16 F.3d at 1063. The Court explained that even though a forfeiture is styled a civil proceeding under the drug statute, severe penalties are imposed, and reiterated these principles:

> Forfeiture is a " 'harsh and oppressive procedure' which is not favored by the courts." *$31,990,* 982 F.2d at 856 (quoting *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 454 (7th Cir.1980)). Accordingly, "the burden on the government to adhere to procedural rules should be heavier than on claimants." *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1547 (11th Cir. 1987).[18]

16 F.3d at 1069. After analyzing the facts, the Ninth Circuit concluded that probable cause had not been established prior to the seizure:

> At most, the evidence that the government legally obtained prior to the institution of forfeiture proceedings raises only a suspicion that the money was furnished or in-

---

**17.** The dog sniff evidence was ruled inadmissible because there had been an undue delay in securing the dog. In note 21 of *$191,910.00 in United States Currency,* the court made the following observation in response to the contention that there is a general contamination of America's paper money supply such that a dog alert to a particular batch of currency does not mean that it has been involved in drug trafficking.

In recent years, courts have increasingly questioned the reliability of dog alerts for precisely this reason. See *United States v. $53,082.00 in United States Currency,* 985 F.2d 245, 250–51 n. 5 (6th Cir.1993); *United States v. $639,-558.00 in United States Currency,* 955 F.2d 712, 714 n. 2 (D.C.Cir.1992); *Jones v. U.S. Drug Enforcement Admin.,* 819 F.Supp. 698, 719–21

(M.D.Tenn.1993); *United States v. $80,760.00 in United States Currency,* 781 F.Supp. 462, 475–76 & n. 32 (N.D.Tex.1991), aff'd, 978 F.2d 709 (5th Cir.1992) (table).

**18.** In note 37 of *$191,910.00 in United States Currency,* the Ninth Circuit also pointed out that in *United States v. James Daniel Good Real Property,* 510 U.S. ——, ——, 114 S.Ct. 492, 502, 126 L.Ed.2d 490, 504 (1993), the United States Supreme Court had observed that the government had a "direct pecuniary interest in the outcome of the [forfeiture] proceeding." This was buttressed by note 2 in the Supreme Court's decision in *James Daniel Good,* which contained a 1990 memorandum from the Attorney General urging United States Attorneys to increase the volume of forfeitures to reach the budget target of $470 million. 16 F.3d at 1069.

tended to be furnished in exchange for drugs.

*Id.* at 1071.

A lack of probable cause was also found in *United States v. $38,600 in United States Currency,* 784 F.2d 694 (5th Cir.1986), where the appellant was stopped by Border Patrol agents at a permanent highway checkpoint in Texas. While questioning the appellant about his citizenship, an agent detected the scent of marijuana coming from inside the car. The car was searched, and agents found a travel bag which contained a small pipe with marijuana residue, a package of cigarette papers, a small pair of scissors, and a small metal box. Upon removing the bottom portion of the back seat, the agents discovered three large manila envelopes containing approximately $38,600.00 in U.S. currency in rubber-band-wrapped bundles of twenty, fifty and hundred dollar bills.

> We find that the $38,000 discovered in Alvaro Freitas' car, even when considered in conjunction with the pipe and rolling papers and Alvaro's evasiveness concerning his destination and the money's owner, is insufficient to sustain the district court's finding. As we have earlier suggested, this evidence may very well give rise to a reasonable belief that there exists a connection between the money seized and *some* illegal activity; here, however, the evidence gives rise only to a suspicion of a connection between the money seized and its use in a transaction for a controlled substance.

784 F.2d at 699 (emphasis in original).

Moreover, even if we could say that there was initially sufficient probable cause to seize the currency in this case, our forfeiture statute, as earlier stated, requires that there be a substantial connection between the property seized and the defendant's illegal drug activity. This was the added element that the Ninth Circuit found not to have been established in *$191,910.00 in United States Currency, supra:*

> Most important, there is nothing in either the amount of money Morgan admitted to carrying or the partially conflicting explanations he offered which connects the money to drugs. [A]s we have explained, sus-

picions of general criminality are not enough. To obtain forfeiture under § 881, the government must have *probable cause* to believe that the money is connected specifically to *drug* activities.

16 F.3d at 1072 (citations omitted) (emphasis in original).

In *United States v. $31,990 in United States Currency,* 982 F.2d 851 (2d Cir.1993), a New York state police officer stopped an older model Cadillac used to transport persons for hire, which was known as a gypsy cab. It was stopped because the car's registration was suspended and its owner was a wanted person. Both the operator and passenger were citizens of the Dominican Republic and had been drinking. The operator was arrested for driving while intoxicated, and a search of his person revealed one-half gram of cocaine, for which he was also arrested. A subsequent inventory search of the vehicle uncovered $31,990 in cash wrapped in elastic bands and stored in plastic bags in the trunk. Both occupants of the car denied any knowledge of the money and said it did not belong to them or to the owner of the car. They told a story that an unidentified black male, whom they had given a ride to Schenectady, had left it behind.

The money was seized, and forfeiture proceedings were initiated. An individual by the name of Gonzales intervened in the proceeding, claiming he was the owner of the money and had left it in the car the day before the seizure. There appears to be no argument that the initial seizure of the currency was valid, based on the arrest and subsequent inventory search of the vehicle. What was at issue was whether the government had established probable cause that there was a substantial connection between the seized currency and illegal drug trafficking.

The government offered the following facts: (1) the large amount of money seized and its packaging is indicative of drug trafficking; (2) the amount seized was approximately equal to the then price of a kilogram of cocaine; (3) the money was found in close proximity to cocaine, i.e. the one-half gram on the driver; (4) the seizure was on a throughway which was a major drug route;

(5) the car was the type frequently used to transport drugs; (6) Schenactady was known as a center of Dominican drug activity; (7) all involved were Dominican and their activities were consistent with Dominican drug trafficking in the United States; and (8) the fabricated story offered by the occupants of the car. 982 F.2d at 853. After analyzing these factors, the Second Circuit found no probable cause, stating:

> To support forfeiture of the money in the instant case, the government suggests a drug courier profile which indicates that, whenever two Dominicans are driving a cab on the New York State Thruway between Schenactady and New York City, any money found in the trunk wrapped and bundled in plastic bags must be connected with the illegal sale of drugs. This profile, in our view, is unrealistic in that it describes a "large category of presumably innocent travelers, who would be subject to virtually random seizures." *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam). Indeed, the suspicions suggested by the government are "simply too slender a reed to support the seizure in this case."

982 F.2d at 856 (citations omitted).

In the present case, we do not find that the State has provided probable cause to show a substantial connection between the money seized and the defendant's illegal drug transaction. The amount of money seized was not insignificant, but, as the Second Circuit stated in *$31,990 in United States Currency:*

> The possession of large amounts of cash is not more indicative of drug sales than it is of weapon sales, gambling, or a myriad of other illegal activities. At best, the presence of a large amount of cash in the cab supports an inference of illegal activity but does not suggest that the seized currency was tied to the exchange of a controlled substance.

982 F.2d at 854.

In the case now before us, the money was packaged in envelopes bound by rubber bands, which was recognized by the Second Circuit as being "... probative of drug activity ... but it is but one factor weighing in favor of a finding of probable cause." 982 F.2d at 854. However, Palmero offered a logical explanation for the money. As stated in the forfeiture petition, it resulted from the sale of real estate in Cleveland for $28,000.00. The petition also explained that he had deposited the sales check in his credit union in Cleveland and offered to call his girlfriend, who could forward papers to substantiate his claim.

Although there was no dog alert as to the interior of Palmero's car, the petition claims there was a dog alert as to the currency in the black bag. This fact may demonstrate that the currency is contaminated, but it does not demonstrate a substantial connection to any illegal activity on the part of its possessor, Palmero. It must be remembered that Palmero, according to the petition, was not evasive nor shown to have lied to the investigating officer. He gave his address in Cleveland, Ohio, which is where the forfeiture notice was served and accepted by his daughter. In fact, as the forfeiture petition states, he cooperated by consenting to a search of his vehicle, which enabled the officers to find the money in the black bag. Again, it bears emphasizing that Palmero had a logical explanation for the money. It had resulted from a sale of real estate, and he gave the name of a person who could verify this information.

The only thing in the forfeiture petition that could link Palmero to an illegal drug transaction was a statement from a drug enforcement agent that Palmero was in violation of a bond he had posted in a federal district court in Ohio on an indictment for conspiracy to distribute cocaine. This would not establish a substantial connection that the funds seized were, or would be, used in an illegal drug transaction. Certainly, the facts here are far less compelling than those in *United States v. $191,910.00 in United States Currency, supra; United States v. $31,990.00 in United States Currency, supra;* and *United States v. $38,600 in United States Currency, supra.*

State courts that have drug forfeiture statutes similar to ours have been careful to require that there be some nexus between the items seized and proof that an illegal offense had been committed or was intended

to be committed. In *Kaneshiro v. $19,050.00 in United States Currency*, 73 Haw. 229, 832 P.2d 256 (1992), a box was mailed from Honolulu to San Francisco. In Honolulu, it was subjected to a routine agriculture inspection, where by shaking it, the inspector thought it contained seeds, plants, or other items. When opened, it was found to contain peppercorns around a heat-sealed plastic bag. Inside the bag was $19,050 in currency. The Honolulu police were contacted, and the currency was sniffed by a dog trained to detect narcotics. The dog "alerted" to the presence of illegal substances in the package, but no illegal drugs were found. 832 P.2d at 257.

The state attempted to sustain probable cause by pointing not only to the dog alert, but to the manner of packing and concealing the currency and its method of shipment. The court rejected these facts as being insufficient to establish probable cause:

> Here, while the manner in which the money was packaged and shipped may have been suspicious, even combined with the results of the dog sniff test, the State did not present sufficient evidence to support a finding that a covered offense had been committed or even attempted, nor to support a finding of probable cause for the seizure.

832 P.2d at 259.

Similarly, in *State ex rel. Means v. $1,354,450.50 in United States Currency*, 841 P.2d 616 (Okl.App.1992), a Raul Bustamante, along with his brother-in-law, a Mr. Medina, were stopped on an improper change of lane. Some $30,000.00 was found in a suitcase, wrapped in three brown bundles. This money was subjected to a drug sniffing dog, who "alerted". A subsequent, more thorough search found the remaining money in the side panels and back seat of the car. No drugs or drug paraphernalia were found in the vehicle. Neither party in the vehicle had ever had a drug conviction. The court, in a rather cryptic statement, concluded:

> The state offered no proof that the currency was connected to any violation of the Act, and thus, the trial court properly denied the forfeiture.

841 P.2d at 618.

In *Means*, the court pointed out that the car occupants had offered an explanation for the large amount of cash, stating that it was funds raised for a Mexican political party. In the present case, an even more plausible explanation was offered by Palmero, with the further offer to obtain verification from Ms. Rivera. We have earlier discussed his cooperation in consenting to the search of the bag that contained the money. While the dog "alert" may constitute a suspicious circumstance, we do not find that it constitutes probable cause to make a substantial connection between the currency and an illegal drug transaction on the part of Palmero. Much the same is true of the petitioner's assertion that Palmero was on bond from a charge of conspiracy to distribute cocaine. It would appear that, absent additional information, this does not create a sufficient nexus to tie the currency seized to an illegal drug transaction on the part of Palmero.

For the foregoing reasons, we find the seizure to be based on insufficient probable cause and, therefore, set aside the forfeiture order.

Reversed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.