591 S.E.2d 208

**STATE of West Virginia and Mon Valley Drug Task Force, Petitioners Below, Appellees,**

v.

**Forty–Three Thousand Dollars and No Cents ($43,000.00) in Cashier's Checks, Respondent Below, Appellant.**

No. 31224.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Nov. 26, 2003.

Darrell V. McGraw, Jr., Esq., Attorney General, Jon Blevins, Esq., Assistant Attorney General, Charleston, Perri Jo DeChristopher, Esq., Assistant Prosecuting Attorney, Morgantown, for Appellees.

William L. Frame, Esq., Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, P.L.L.C., Morgantown, for Appellant.

MAYNARD, Justice.

In the instant case, the appellees, the State of West Virginia and the Mon Valley Drug Task Force (MVDTF), filed a forfeiture action pursuant to the provisions of West Virgi-

nia Code, § 60A–7–701—707 (1988), which constitutes the West Virginia Contraband Forfeiture Act (WVCFA), seeking to forfeit $43,000 in cashier's checks owned by the appellant, Kenneth Jenkins (hereinafter, "Jenkins").[1] The parties agreed to submit cross-motions for summary judgment to the circuit court, having come to the conclusion that the documentary evidence filed by both parties provided undisputed facts. The circuit court concluded that the State carried its burden, demonstrating that the facts were sufficient to justify forfeiture of the $43,000 in cashier's checks under the WVCFA. Jenkins now appeals the circuit court's order granting summary judgment to the State and the MVDTF. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court affirms the decision of the circuit court.

## I.

## FACTS

During several months at the end of 2000 and throughout the beginning months of 2001, Kenneth Jenkins was the subject of a criminal investigation by the MVDTF. In January and February of 2001, fifty-four-year-old Jenkins illegally sold prescription narcotics to the MVDTF in the amount of twenty-two prescription pills during a span of six controlled "buys" for $440. Subsequently, on February 6, 2001, the MVDTF instituted a "reverse sting" whereby Jenkins agreed to unlawfully purchase 430 Oxycontin tablets for the sum of $8,000. Jenkins removed $6,000 from a WesBanco safe deposit box to purchase the illegal narcotics.

Following Jenkins' February 6, 2001 arrest and during the execution of a search warrant at his home that same day, agents located $1,910 cash; controlled substances totaling approximately 809 pills of numerous varieties; tablets, papers and ledgers related to Jenkins' drug distribution business; and a safe deposit key. Based upon the discovery of the key, along with information provided

by a confidential informant, a search warrant was obtained and executed on the safe deposit box the following day. Among other items in the safe deposit box, the $43,000 in dispute was recovered in the form of twelve cashier's checks for various amounts. Nine of the twelve checks were dated November 3, 2000, and totaled $38,000, while three more checks were dated November 6, 2000, and amounted to $5,000.

It is undisputed that during the past ten years Jenkins' only sources of legitimate income were social security disability benefits, food stamps, and a medical card. When asked to account for the $43,000, Jenkins initially responded that it was his life savings and that it came from "a myriad of activities," but that none of these activities included illegal drug distribution. Jenkins then refused to specify further what types of activities yielded this money, citing his Fifth Amendment right not to incriminate himself.

Jenkins was originally charged with six counts of delivery of a controlled substance to an undercover drug task force agent; two counts of possession with intent to deliver a controlled substance (the result of a search warrant); and one count of attempting to possess a controlled substance with intent to deliver. On September 24, 2001, Jenkins entered a guilty plea to the felony charges of delivery of a controlled substance, Oxycontin, and possession with intent to deliver a controlled substance, Oxycontin. On June 18, 2002, the circuit court found that the State of West Virginia, on behalf of the MVDTF was entitled to the forfeiture of the $43,000 in cashier's checks found in Jenkins' safe deposit box.

## II.

## STANDARD OF REVIEW

■ Jenkins contends that the circuit court erred in granting summary judgment to the State and the MVDTF. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189,

1. The State included in its original May 2, 2001 complaint as additional respondents, $9,910.00 in United States Currency and a 1999 Isuzu Rodeo, VIN number 4S2CM58W5X4332403. However, on September 24, 2001, the State entered into an agreed order of forfeiture, whereby Jenkins agreed not to contest the forfeiture of these two items, leaving the $43,000 in cashier's checks as the only matter to be resolved by the circuit court.

451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

▪ Moreover, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). In addition, "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

We proceed with our examination of the assigned errors with this standard in mind.

## III.

### DISCUSSION

▪ The WVCFA provides for State seizure and disposition of items used in connection with illegal activities involving controlled substances.[2] Jenkins argues that the circuit court erred in finding a substantial connection between his drug transactions and the remaining $43,000 in cashier's checks simply because he purchased pills by taking $6,000 in cashier's checks out of the same safe deposit box. Jenkins also maintains that "there is an obvious cloud of uncertainty as to the applicable burden of proof" and contends that "the *Frail* opinion erroneously infuses the 'probable cause' standard from the 'seizure' hearing into the 'forfeiture' hearing." Conversely, the State declares that there was a substantial connection between the property seized and the illegal drug transaction. Further, the State contends that "the *Frail* Court was correct in the assertion that probable cause ... was required to support the petition for forfeiture by a showing of the required substantial connection." We believe it is necessary to first clarify the appropriate burden of proof from this Court's holding in Syllabus Point 5 of *Frail v. $24,900.00 in U.S. Currency,* 192 W.Va. 473, 453 S.E.2d 307 (1994).

In *Frail,* this Court overturned a forfeiture of currency that had been taken from a man who had been charged with a drug transaction in another jurisdiction because there was insufficient evidence presented at trial to show that the seized money represented the fruits of drug dealing. We held in Syllabus Point 5 of *Frail* that:

> Under W.Va.Code, 60A–7–703(a)(6) (1988), the State, in forfeiting property, is required to demonstrate that there is probable cause to believe there is a substantial connection between the property seized and the illegal drug transaction. This finding is in addition to the initial finding of probable cause that an illegal act under the drug law has occurred.

In the final order, the circuit court judge indicated that there was a question with regard to the exact burden required of the

---

**2.** *See* W.Va.Code § 60A–7–703 (1988) (enumerating items subject to forfeiture and persons authorized to seize forfeitable items); W.Va.Code § 60A–7–704 (1996) (providing procedures for seizure of forfeitable property); and W.Va.Code § 60A–7–705 (1988) (specifying the procedures and requirements for forfeiture).

State in order to sustain a petition for forfeiture under the WVCFA. On this point, the circuit judge specifically found that the State had met its burden regardless of the standard used. Monongalia County Circuit Judge Robert B. Stone's June 18, 2002 final order provides:

> While *Frail* endorses the "probable cause of a substantial nexus burden," W.Va. code 60-A-7-705(e), as noted above, seems to say the State must prove their forfeiture case by a preponderance. At any rate, this Court believes that Frail mandates the clear message that the State must establish a "substantial" nexus or connection between the target property and illegal drug activity. As explained above, in the current case, the state has done this by probable cause and a preponderance.

We believe the circuit judge perceptively observed an aspect of our *Frail* decision which has, at least in terms of its application, arguably resulted in some misapprehension as to what the proper standard of evidence is to support an actual forfeiture of property as opposed to simply a seizure of property. Although the State argues that probable cause is the standard for both proceedings, it is difficult for us to agree with the State in light of the plain language of W.Va.Code § 60A–7–705(e) (1988), which provides, "[a]t the hearing upon the claim or claims, the state shall have the burden of proving by a preponderance of the evidence that the seized property is subject to forfeiture pursuant to the provisions of this chapter."

3. *See State v. $113,871 in U.S. Currency,* 152 Or.App. 770, 774, 954 P.2d 218, 221, n. 3 (1998).

4. CAFRA's allocation of the burden of proof to the government by a preponderance of the evidence was initially proposed by the United States Department of Justice. *See,* U.S. Dep't of Justice, Criminal Div., Asset Forfeiture and Money Laundering Section, *Asset Forfeiture: Law and Practice Manual* at 4–74 n. 236 (June 1998) ("[T]he Department of Justice has proposed legislation requiring the government to prove by the preponderance of the evidence, as opposed to probable cause, that the crime was committed and the property is subject to forfeiture.").

5. We hasten to point out that our discussion of the constitutionality aspect of this case is done solely within the context of our holding that this

We also find the State's argument difficult to accept as the permanent deprivation of property under the forfeiture act implicates concern for procedural due process. Indeed, permitting the government to forfeit property under only a showing of probable cause is a "constitutional anomaly." 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 2.04, at 2–37 (1996). Thus, we recognize that a forfeiture act that does not place upon the government the burden of proving forfeiture by a preponderance of the evidence has, if not found unconstitutional,[3] at least has been "criticized repeatedly by the courts and legal commentators." *United States v. Real Property,* 241 F.3d 796, 799 (6th Cir.2001). As a matter of fact, Congress in 2000 passed the Civil Asset Forfeiture Reform Act (CAFRA), which, in part, eliminated the federal standard that placed the burden on the property's owner by a preponderance of the evidence in a forfeiture proceeding and instead placed "the burden of proof ... on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[,]" 18 U.S.C. § 983(c)(1) (2000),[4] "the burden normally borne by the plaintiff in a civil case[.]" *Real Property,* 241 F.3d at 799. *Accord Sharon B.W. v. George B.W.,* 203 W.Va. 300, 303, 507 S.E.2d 401, 404 (1998) ("[t]he general standard of proof in civil cases is preponderance of the evidence."). We find these concerns an additional compelling rationale to bring *Frail* into line with the preponderance standard required by W.Va.Code § 60A–7–705(e).[5] Moreover, we have an obligation to apply the law as the West Virginia Legislature has written it.[6] Thus, we find it neces-

Court must implement the statute that the legislature has passed. Thus, our opinion in no way should be seen as venturing our own independent judgment as to whether a lesser standard of proof than preponderance of the evidence placed upon the State may be constitutionally permissible as a matter of constitutional interpretation *vel non.*

6. When the meaning of a statute is plain and incapable of multiple constructions, it is our duty to apply, not construe, the language adopted by the Legislature. *See Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (" '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' ") (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249,

sary to modify Syllabus Point 5 of *Frail* to make it consistent with W.Va.Code § 60A–7–705(e). Therefore we hold that:

> Under W.Va.Code, § 60A–7–703(a)(6) (1988), the State, in forfeiting property, is required to demonstrate by a preponderance of the evidence that there is a substantial connection between the property seized and the illegal drug transaction. This finding is in addition to the initial finding of probable cause that an illegal act under the drug law has occurred. To the extent that Syllabus Point 5 of *Frail* conflicts with this holding, it is hereby modified.

With the modification of Syllabus Point 5 of *Frail* behind us we now discuss the circuit court's finding that the State met its burden of proving by a preponderance of evidence that there was a substantial connection between the property seized and an illegal drug transaction. In *Frail,* the seizure of money occurred from a traffic stop where no drug violation was discovered, where no arrest for a drug violation was ever made, and where no search warrant was obtained. By contrast, in this case it was undisputed that Jenkins took $6,000 from a specific pool or reservoir of cash-the $49,000 in cashier's checks at the WesBanco safe deposit box-in order to purchase illegal drugs, and that this reservoir of cash constituted Jenkins' property. The circuit court found that "this fact alone provides *direct* evidence, which establishes by a clear preponderance, let alone by probable cause, that there is a substantial nexus between the illegal drug-related activity of [Jenkins] and all of the money which was found in the safe deposit box." We agree. Furthermore, as Jenkins obtained the vast portion of the cash from the reservoir of funds contained in the safe deposit

box in order to purchase Oxycontin pills from the undercover law enforcement agent, it stands to reason that the cashier's checks were maintained for Jenkins to use in future violations of W. Va.Code § 60A–4–401—409 (1983). The money was not placed into an interest bearing account or any account nor invested in any manner. Moreover, all the cashier's checks totaling $43,000 were purchased during a three day span, during which and for ten years previous thereto, Jenkins' only sources of income were social security disability benefits, food stamps, and a medical card. Also, at some point there must be a common sense evaluation of the facts of this case. For goodness sake, how many people in West Virginia who are on food stamps have $43,000 in cash on hand?

Jenkins' argument is basically that this situation is no different from cash located in a cookie jar or a personal checking account. Nonetheless, there is no independent basis for Jenkins to have this large amount of money in the form of cashier's checks sitting in a safe deposit box. There simply is no evidence of co-mingling of drug money and funds from any legitimate sources. There is only clear and undisputed evidence of a history of substantial illegal drug dealing including the buying and selling of illegal narcotics to undercover agents. There is also this evidence of the existence of a large and suspicious pool of cash used in this transaction that had been converted into $43,000 in cashier's checks during approximately a seventy-two hour period during which Jenkins was admittedly involved in illegal drug transactions. In this case, the simple facts and the totality of the circumstances leads to no reasonable conclusion other than this $43,000 was drug money intended to be used in drug transactions in violation of the WVCFA.[7]

253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)); Syllabus Point 4, *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999) (" ' "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus Point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)."); Syllabus Point 5, in part, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 ("Where the language

of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (internal quotations and citations omitted)); *DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

7. Jenkins' brief contains a section entitled "[c]omparison to holdings in other jurisdictions." We find that argument to be a continuation of his argument that there was not a sub-

Moreover, allowing admitted drug dealers, such as Jenkins, to simply avoid forfeiture by stockpiling cash in the form of cashier's checks would only reward and in fact encourage further violations of our drug laws.

Jenkins also argues that while he admitted he unlawfully transferred prescription pills to third parties, "there is no basis for the circuit court to extrapolate gross income from the above admissions nor any other evidence in the record." Jenkins argues that the circuit court premised its findings that he had realized more than $50,000 from his drug distribution business on the investigative notes that he argues were not substantiated or verified during the course of discovery. Jenkins maintains that the circuit court's finding of fact is without support in the record.

However, the State correctly notes that Jenkins "reports no income from legitimate employment to account for the source of the money, no sale of property, no inheritance, no lottery winnings." Jenkins received a social security disability check in the amount of $500 to $530 each month that was directly deposited into his regular checking account. While Jenkins also cited food stamps and a medical card as legitimate sources of income, these sources do not generate any additional cash income as they simply supplement the recipient's ability to obtain food and medical care. As such, the only other evidence of any sources of income were Jenkins' drug dealings. While it is certainly correct that Jenkins has the right to assert his Fifth Amendment privilege with regard to the origin of the $43,000 in cashier's checks, it is disingenuous to then ask this Court to merely assume the funds are *not* from his illegal drug distribution business when he refuses to offer any other alternate source for these monies. Moreover, Jenkins admitted to a history of drug activity which by itself is a very proper and highly probative factor in the forfeiture calculus. *See, United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 286 (6th Cir.1992).

Furthermore, in finding that Jenkins realized more than $50,000 in gross income from his drug distribution operation, the circuit court explained that such amounts were indicated in statements provided by Jenkins to MVDTF agents. For example, Jenkins admitted to the agents that he would obtain legitimate prescriptions for Oxycontin and Xanax, (no doubt paid for by the taxpayers through Jenkins' medical card), and then illegally sell these pills to others, which demonstrated that some of the drugs Jenkins sold were all profit, inasmuch as he obtained these drugs without cost to him. The circuit judge found that "[t]he reasonable conclusion, by a preponderance, from all the evidence, is that the remaining cashier's checks in the safe deposit box represent monies derived from illegal drug sale." To find for Jenkins, given the plain facts of this case, would be against the spirit and purpose of the forfeiture act. Also, and we emphasize, the burden of the State was *not* to require a finding of guilt with regard to a series of transactions that added up to exactly $43,000 in cashier's checks. Instead, the State was required to demonstrate by a preponderance of the evidence that there was a substantial connection between the property seized and the illegal drug transaction. Jenkins attempts to confuse the issue of his guilt or innocence for specific crimes and the sums involved in those transactions which may or may not add up to exactly $43,000, and claims that since those amounts do not equal $43,000 there, accordingly is no nexus between the remaining $43,000 in cashier's checks and his illegal drug activity. This is not a persuasive argument. The forfeiture of items under the WVCFA does not depend upon the guilt of the owner of the items. Instead, in a forfeiture action, the question is whether the items themselves may be associated with criminal activity related to controlled substances. W.Va.Code § 60A–7–703. Moreover, the Legislature has declared that forfeiture proceedings under the WVCFA are civil proceedings, thus eliminating any doubt that they may be criminal actions against an individual. W.Va.Code § 60A–7–705(a)(1) (1988). *See also State v. Greene,* 196 W.Va. 500, 473 S.E.2d 921 (1996) (holding that civil forfeiture provisions found

stantial nexus between the illegal drug-related activity of Jenkins and the money found in his

safe deposit box. We have adequately discussed this issue.

in W.Va.Code §§ 60A–7–703(a)(2) and (4) are not punitive for purposes of constitutional guarantees against double jeopardy).

In this case, the circuit court correctly found that the strong preponderance of the evidence showed that the funds sought to be forfeited have been used or were intended to be used to facilitate violations of laws prohibiting illegal drug transactions and that the monies seized from Jenkins' safe deposit box were proceeds traceable to Jenkins' drug activities and intended to be used to facilitate future drug transactions. The State and the MVDTF met their burden and Jenkins had every opportunity to then prove that the cashier's checks came from legitimate sources. He did not. We affirm the forfeiture of $43,000 in cashier's checks.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Monongalia County entered on June 18, 2002, is affirmed.

Affirmed.

Davis, J., concurred in part, dissented in part, and filed a separate opinion.