736 S.E.2d 40

**Tricia DEAN, Defendant
Below, Petitioner**

v.

**STATE of West Virginia and Jefferson
County Sheriff's Department, Plaintiff
Below, Respondent.**

No. 11–0283.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 5, 2012.

Decided Nov. 9, 2012.

Ruth A. McQuade, Esq., Shepherdstown, WV, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Benjamin F. Yancey, III, Esq., Assistant Attorney General, Charleston, WV, for Respondents.

WORKMAN, Justice:

This case is before the Court upon an appeal of Tricia Dean from a January 13, 2011, Order entered by the Circuit Court of Jefferson County granting the Respondent's, State of West Virginia's, Jefferson County Sheriff's Department's ("hereinafter referred to as "the State"") Motion for Summary Judgment. The circuit court ordered that "any right, or title of interest to ... property located at 64 White Tail Lane," in Kearneysville, Jefferson County, West Virginia be vested in the Jefferson County Sheriff's Department. The Petitioner argues that the circuit court erred: 1) in incorporating and relying upon factual assertions from the government's motion for summary judgment that included facts outside the agreed upon record; 2) in finding that the forfeiture of the Petitioner's property did not constitute an "excessive fine" under article III, section 5 of the West Virginia Constitution [1] or under the Eighth Amendment to the United States Constitution; [2] and 3) in finding that the forfeiture of the Petitioner's property was not excessive without first having an evidentiary proportionality hearing. Based upon a review of the parties' briefs and arguments, the record and all other matters submitted before the Court, we reverse the circuit court's grant of summary judgment and its determination that the Excessive Fines Clause in the West Virginia Constitution and the United States Constitution were not violated and remand for further development of the record.

I. Facts and Procedural History

According to facts set out in the circuit court's "Order Granting Petitioner's Motion for Summary Judgment," on February 25, 2012, a confidential informant working with the Jefferson County Sheriff's Department made a monitored telephone call to the Petitioner and arranged to purchase $700 worth of crack cocaine. The Petitioner informed the confidential informant that she had to wait until "her girl," referring to her drug supplier Michele Craig, arrived at her residence before she could complete the deal. The Petitioner is the sole owner of her home, which is located on one and one-half acres of land at 64 White Tail Lane in Kearneysville, West Virginia.

Later that same day, the Petitioner contacted the confidential informant and told the informant that Ms. Craig was at her home. The Petitioner's boyfriend, Gary Caviness, was also at her home. Following this conversation, the confidential informant went to the Petitioner's home where the informant purchased $500 worth of crack cocaine from Mr. Caviness. Following this transaction, the Petitioner requested and received $100 from the confidential informant for setting up the drug deal. The confidential informant then purchased an additional $100 worth of crack cocaine from Mr. Caviness.

As a result of the foregoing criminal investigation, the Petitioner and others were arrested at the Petitioner's home. The record indicates that a criminal complaint was filed against the Petitioner in state court on February 26, 2010. That case was later dismissed due to the prosecution of the Petitioner in federal court.

On April 13, 2010, the State filed its verified petition for forfeiture of the property located at 64 White Tail Lane, Kearneysville, Jefferson County, West Virginia, based upon

---

1. Article III, section 5 of the West Virginia Constitution ("Excessive Fines Clause") provides, in pertinent part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence."

2. The Eighth Amendment to the United States Constitution ("Excessive Fines Clause") provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

the provisions of West Virginia Code §§ 60A–7–701 to –707 (2010 and Supp.2012).

On May 19, 2010, a federal grand jury for the Northern District of West Virginia returned a five-count indictment against the Petitioner for conspiracy to distribute 5 grams of crack cocaine (Count 1), distribution of 3.3 grams of crack cocaine (Count 2), distribution of 1.5 grams of crack cocaine (Count 3), distribution of 4.7 grams of crack cocaine (Count 4), and distribution of 4.8 grams of crack cocaine (Count 5).

On June 11, 2010, the Petitioner moved the circuit court to stay the State's forfeiture action pending resolution of the federal prosecution and the circuit court granted the motion on June 28, 2010.

On July 2, 2010, the Petitioner entered into a plea agreement with the United States Government in which she agreed to plead guilty to Count 5 of the federal indictment [3] in exchange for the government dismissing Counts 1 through 4,[4] as well as agreeing to make a nonbinding recommendation to the federal court that the Petitioner receive a lighter sentence. Specifically, Count 5 of the indictment charges:

> On or about the 25th day of February, 2010, at approximately 4:00 p.m., in Kearneysville, Jefferson County, West Virginia, within the Northern Judicial District of West Virginia, defendants Michelle Evette Craig, Tricia Lynn Dean, and Gary Rufus Caviness, Jr., aided and abetted each other, did unlawfully, knowingly, intentionally and without authority distribute approximately 4.8 grams or more of a mixture and substance containing a detectable amount of cocaine base, also known as "crack", a controlled substance, to a person known to the Grand Jury, in exchange for $600.00.

The Petitioner pleaded guilty in federal court on July 15, 2010. A status conference was held on the forfeiture action in state court on September 20, 2010. During this hearing, the State agreed to rely on Count 5 of the federal indictment in moving for summary judgment in the forfeiture case. Regarding this agreement, counsel for the State indicated on the record that its summary judgment motion would be based upon the Petitioner's federal plea to Count 5 and the State would not allege any other violation. As part of this agreement, the Petitioner agreed to drop discovery that had been propounded to the State.[5]

On September 29, 2010, the State filed its summary judgment motion in the forfeiture action. On October 26, 2010, the circuit court issued an order granting the State's motion. At the time the order was issued, the circuit court was unaware that the State and the Petitioner had informally agreed to an extension of time for the Petitioner to respond to the State's motion.

On November 1, 2010, the Petitioner filed her opposition to the State's summary judgment motion. On December 12, 2010, the circuit court held a hearing on the State's motion for summary judgment. It is significant that at the hearing, no evidence was introduced, nor was testimony offered regarding the value of the Petitioner's property that was subject to forfeiture or whether there was a history of drug problems at the subject property. Thus, the only evidence before the Court was the Petitioner's federal guilty plea to Count 5 in the indictment, which was a single drug transaction. There was no evidence of the Petitioner's property being involved in the transaction. Nor was there any evidence on the value of the property the State sought to have forfeited in Count 5. Consequently, other than a single

---

**3.** The charges set forth in Count 5 of the federal indictment constituted a violation of 21 United States Code § 841(a)(1). Under this federal statute any person convicted of distributing a Schedule II controlled substance, which includes crack cocaine, *see* 21 U.S.C.A. § 812(c), "shall be sentenced to a term of imprisonment of not more than 20 years" and/or fined "$1,000,000." 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

**4.** The charges contained within Counts 1 through 4 of the indictment occurred prior to the events set forth in Count 5 of the indictment, which occurred on February 25, 2010.

**5.** Some of the information sought by the Petitioner in her discovery requests included tests and analyses of the drugs retrieved by law enforcement, any video taken during the investigation of the case, statements of co-conspirators, and appraisals of the real property.

drug transaction, the record is completely devoid of evidence regarding the property sought to be forfeited.

The circuit court, by Order entered January 13, 2011, granted the State's summary judgment motion a second time. On January 25, 2011, the Petitioner filed a motion for reconsideration of the summary judgment or, alternatively, a motion to modify the order. That motion was denied by the circuit court.

## II. Standard of Review

 This Court has previously held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, because this case also involves the applicability of the Excessive Fines Clause to a forfeiture proceeding, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. Argument

### A. Summary Judgment

The first issue before the Court concerns whether the circuit court properly granted summary judgment to the State in this action for forfeiture of the Petitioner's property. The Petitioner argues that summary judgment was improper because the circuit court considered facts outside the record. The Petitioner asserts the parties agreed that the basis for the State's summary judgment motion would be solely the facts contained in Count 5 of the federal indictment to which the Petitioner pleaded guilty. Yet, the Petitioner contends that the State included facts outside those set forth in the indictment to support its summary judgment motion. The State, however, argues that it did not include facts outside those agreed upon in the record.

 This Court has previously held that " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desir-able to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). Further, this Court held in syllabus point two of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), that

[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 56, 459 S.E.2d at 333.

 Regarding the proof necessary to sustain forfeiture of property, in syllabus point four of *State v. Forty Three Thousand Dollars and No Cents in Cashier's Checks,* 214 W.Va. 650, 591 S.E.2d 208 (2003), we held:

Under W. Va.Code, § 60A–7–703(a)(6) (1988), the State, in forfeiting property, is required to demonstrate by a preponderance of the evidence that there is a substantial connection between the property seized and the illegal drug transaction. This finding is in addition to the initial finding of probable cause that an illegal act under the drug law has occurred.

214 W.Va. at 651, 591 S.E.2d at 209, Syl. Pt. 4, in part.

 According to the record before the Court, during the summary judgment hearing, the State failed to introduce any evidence by way of testimony or otherwise before the circuit court to establish any connection between the single drug transaction to which the Petitioner pleaded guilty and the Petitioner's property. Consequently, the circuit court's findings regarding the drug transaction occurring at the Petitioner's residence are not supported by any evidence introduced either as part of the State's summary judgment motion or at the hearing before the circuit court. The State merely offered averments and assertions. Due to the lack of evidence, summary judgment was inappropriate as

"the record could not lead a rational trier of fact to find for the nonmoving party...." *Williams*, 194 W.Va. at 56, 459 S.E.2d at 333. Therefore, the circuit court erred in granting summary judgment in favor of the State.

### B. Excessive Fines Clause

Also, before the Court is whether the circuit court erred in determining that the forfeiture of the Petitioner's property did not violate the Excessive Fines Clause of both the West Virginia and United States Constitutions. The State argues that the forfeiture of the Petitioner's property is well within the permissible range of the fine of $1,000,000 that the Petitioner was subject to under the federal sentencing guidelines. Consequently, the State asserts that the forfeiture of the Petitioner's property did not violate the Excessive Fines Clause of either the West Virginia Constitution or the United States Constitution.

Regarding the Excessive Fines Clause violation, the circuit court determined that

[b]y pleading guilty to Count 5 of the federal indictment Ms. Dean has admitted ... that she facilitated the sale of controlled substances to a confidential informant on February 25, 2010, in her home located at 136 Maple Avenue.[6] These facts [sic] legally sufficient to require the forfeiture of Ms. Dean's interest in the property pursuant to West Virginia Code § 60A-7-703.

That the seizure of Ms. Dean's property does not constitute and [sic] "excessive fine" in violation of Article III, Section 6[sic] of the West Virginia Constitution or of the Eighth Amendment to [the] United States Constitution. Ms. Dean was a knowing and willful participant in the felonious sale of a highly addictive and dangerous drug. Furthermore, she purposefully used the property which is the subject matter of this proceeding to facilitate this transaction. In light of her culpability the seizure of this property by the State of West Virginia is not so excessive as to render it unconstitutional.

While the circuit court determined that the forfeiture was not an "'excessive fine' in violation of Article III, section 6[sic] of the West Virginia," this determination was made without any discussion of whether the Excessive Fines Clause was applicable to the forfeiture in the first instance. This Court has never addressed whether a forfeiture of real property under West Virginia Code § 60A-7-703(a)(8) (2010) of the West Virginia Contraband Forfeiture Act is subject to the Excessive Fines Clause of article III, section 5 of the West Virginia Constitution. The Excessive Fines Clause of the West Virginia Constitution provides, in relevant part, that "[e]xcessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence." (Emphasis added); *see* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

Given the lack of jurisprudence on this issue in our State, the Court turns to federal law in light of the similarity of language between the West Virginia Excessive Fines Clause and that found in the Eighth Amendment to the United States Constitution. As has been noted

[t]he United States Supreme Court has determined that some portions of federal asset forfeiture legislation are partially punitive and therefore subject to Eighth Amendment restrictions. Drafted in a similar manner with the intent of achieving similar goals, it would be reasonable to assume that parts of the West Virginia statute [referring to the West Virginia Contraband Forfeiture Act ("WVCFA") ]could receive similar treatment by the courts, and forfeiture proceedings in state court under the WVCFA could also be subject to excessive fines limitations.

Cramer, Joseph, Note, *Civilizing Criminal Sanctions—A Practical Analysis of Civil Asset Forfeiture Under the West Virginia Con-*

---

**6.** 136 Maple Avenue is the incorrect address for the Petitioner's property. The drug transaction occurred at 64 White Tail Lane, Kearneysville, Jefferson County, West Virginia.

traband *Forfeiture Act,* 112 W. Va. L.Rev. 991, 1009 (2010).

The United States Supreme Court addressed the applicability of the Excessive Fines Clause found in the Eighth Amendment to the United States Constitution in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin,* Richard Austin was indicted on four counts of violating South Dakota's drug laws, including possessing cocaine with intent to distribute. Mr. Austin pleaded guilty to the possession charge and was sentenced in state court to seven years imprisonment. An in rem forfeiture action for Mr. Austin's mobile home and auto body shop was filed in the United States District Court for the District of South Dakota pursuant to 21 United States Code §§ 881(a)(4) and (a)(7). 509 U.S at 604, 113 S.Ct. 2801. Mr. Austin answered the petition for forfeiture and the government filed a motion for summary judgment. *Id.* at 605, 113 S.Ct. 2801.

According to the facts set forth in the summary judgment motion, Mr. Austin met Keith Engebretson at the body shop. *Id.* Mr. Austin left the shop, went to his mobile home and returned to the body shop with two grams of cocaine, which he sold to Mr. Engebretson. The State executed a search warrant for both the mobile home and the body shop the next day and discovered small amounts of marijuana and cocaine, a gun, drug paraphernalia and approximately $4,700 in cash. *Id.* In response to the motion, Mr. Austin argued that the forfeiture violated the Eight Amendment, but the district court and the United States Court of Appeals disagreed. *Id.* at 605–06, 113 S.Ct. 2801.

The United States Supreme Court granted certiorari. In analyzing whether the forfeiture violated the Excessive Fines Clause, the Supreme Court noted:

> The purpose of the Eighth Amendment . . . *was to limit the government's power to punish. See Browning–Ferris [Indus. of*

Vt., Inc. v. Kelco Disposal, Inc.*], 492 U.S. [257] at 266–267, 275, 109 S.Ct. [2909] at 2916, 2920 [106 L.Ed.2d 219 (1989) ]. The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense." Id., at 265, 109 S.Ct. at 2915 (emphasis added). "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." United States v. Halper, 490 U.S. 435, 447–448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). "It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." Id., at 447, 109 S.Ct. at 1901. See also United States ex rel. Marcus v. Hess, 317 U.S. 537, 554, 63 S.Ct. 379, 389, 87 L.Ed. 443 (1943) (Frankfurter, J., concurring).*

*Austin,* 509 U.S. at 609–10, 113 S.Ct. 2801 (emphasis added).

The Supreme Court concluded that

> [i]n light of the historical understanding of forfeiture as punishment, the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under §§ 881(a)(4) and (a)(7) serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes "payment to a sovereign as punishment for some offense," *Browning–Ferris,* 492 U.S. at 265 [109 S.Ct. 2909] and, as such, is subject to the limitations of the Eighth Amendment Excessive Fines Clause.

509 U.S. at 621–22, 113 S.Ct. 2801.[7]

In the instant case, the State sought forfeiture of the Petitioner's property under West

---

7. The Supreme Court, in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), reconciled prior law in which the Court had held "that the Double Jeopardy Clause does not bar the institution of a civil, *in rem* forfeiture action after the criminal conviction of the defendant[,]" based upon its view that *in rem* forfeitures were nonpunitive and "traditionally were considered to occupy a place outside the domain of the Excessive Fines Clause." 524 U.S. at 331 and n. 6, 118 S.Ct. 2028. The Supreme Court determined that not all modern civil in rem forfeitures were nonpunitive and, therefore, beyond the parameters of the Excessive

48

Virginia Code § 60A–7–703(a)(8). That statute provides, in relevant part, as follows:

(a) The following are subject to forfeiture:

. . .

(8) All real property, including any right, title and interest in any lot or tract of land, and any appurtenances or improvements, which are used, or have been used, or are intended to be used, in any manner or part, to commit or to facilitate the commission of a violation of this chapter punishable by more than one year imprisonment. . . .

*Id.* We first examine whether a determination that the forfeiture action brought by the State was punitive in nature. In *Frail v. $24,900.00 in United States Currency,* 192 W.Va. 473, 453 S.E.2d 307 (1994), *holding modified on other grounds by State v. Forty Three Thousand Dollars and No Cents ($43,-000.00) in Cashier's Checks,* 214 W.Va. 650, 591 S.E.2d 208 (2003), this Court recognized the " 'penal nature of forfeiture statutes.' " *Id.* at 479, 453 S.E.2d at 313 (quoting *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 902–03 n. 14 (11th Cir.1985)). Moreover, in this case, counsel for the State concedes that the instant forfeiture action brought by the State under the WVCFA against the Petitioner's property was intended to punish and was not remedial. W. Va.Code § 60A–7–703(a)(8). Accordingly, we hold that a forfeiture action brought pursuant to West Virginia Code § 60A–7–703(a)(8) (2010) is punitive in nature and, therefore, subject to the Excessive Fines Clause of article III, section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution.

Next, the focus turns to whether the forfeiture of the Petitioner's property violated the Excessive Fines Clause of the West Virginia Constitution. In *Austin,* the Supreme Court failed to determine whether the in rem forfeiture before it was constitutionally excessive. 509 U.S. at 622, 113 S.Ct. 2801. Rather, the Supreme Court found that "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." *Id.* at 622, 113 S.Ct. 2801. Thus, the Supreme Court reversed the case and remanded for further proceedings.

Subsequently, in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the United States Supreme Court was presented with the issue of whether the forfeiture of currency in connection with a guilty plea of failing to report exported currency was excessive. In *Bajakajian,* the United States Court of Appeals for the Ninth Circuit had determined that forfeiture of any unreported currency seized in connection with a violation of 18 United States Code § 981(a)(1) was per se unconstitutional because the crime in a reporting case was the withholding of information and not the possession of the currency. 524 U.S. at 326–27, 118 S.Ct. 2028. Consequently, the Ninth Circuit reasoned that the currency was not an "instrumentality" of the crime and, therefore, not subject to forfeiture. *Id.* at 327, 118 S.Ct. 2028. In other words, any forfeiture of such currency necessarily violated the Eighth Amendment. *Id.* Because the United States Court of Appeals had determined that the forfeiture was per se unconstitutional, the Supreme Court granted certiorari. *Id.*

The Supreme Court readily acknowledged that it had "little trouble concluding that the forfeiture of currency ordered by § 982(a)(1) constitute[d] punishment." 524 U.S. at 328, 118 S.Ct. 2028. Thus, the Supreme Court turned its focus to whether the forfeiture violated the Eighth Amendment. The Supreme Court recognized that while it had not

Fines Clause. *Id.* at n. 6. The Supreme Court reasoned that

[b]ecause some recent federal forfeiture laws have blurred the traditional distinction between civil *in rem* and criminal *in personam* forfeiture, we have held that a modern statutory forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is

styled *in rem* or *in personam.* See *Austin v. United States, supra,* at 621–622, 113 S.Ct. 2801 (although labeled *in rem* civil forfeiture of real property used "to facilitate" the commission of drug crimes was punitive in part and thus subject to review under the Excessive Fines Clause).

524 U.S. at 331 n. 6, 118 S.Ct. 2028.

previously articulated any standard for determining whether punitive forfeiture was excessive, the Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334, 118 S.Ct. 2028. The Supreme Court then focused on what it termed "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause," which is "the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* Thus, as the Supreme Court determined, "the test for the excessiveness of a punitive forfeiture involves solely a proportionality determination." *Id.* at 333–34, 118 S.Ct. 2028.

The question then became how disproportionate a punitive forfeiture must be in order to be excessive. *Id.* at 335, 118 S.Ct. 2028. The Supreme Court adopted "the standard of gross disproportionality articulated in our first Cruel and Unusual Punishment Clause precedents." *Id.* at 336, 118 S.Ct. 2028 (citing *Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)("[T]he Court has continued to recognize that the Eighth Amendment proscribes grossly disproportionate punishments . . .")); *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The Supreme Court stated:

In applying this standard, the district courts in the first instance, and the courts of appeals, reviewing the proportionality determination *de novo,* must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.

524 U.S. at 336–37, 118 S.Ct. 2028 (footnote omitted).

In *Bajakajian,* applying this standard, the Supreme Court determined that the forfeiture of the respondent's entire amount of unreported currency—$357,144—would violate the Excessive Fines Clause as the crime was solely a reporting offense. *Id.* at 337, 118 S.Ct. 2028. Further, the Supreme Court noted that the money sought to be forfeited was not the proceeds of illegal activity, rather it was obtained through legal means and was going to be used to pay off a lawful debt. *Id.* The Supreme Court recognized that under the federal sentencing guidelines, the maximum sentence that could have been imposed on the respondent was six months in prison and the maximum fine was $5,000. *Id.* Finally, the Supreme Court noted that the harm caused by the respondent's conduct was minimal. *Id.*

The Supreme Court stopped short of holding that a lower court had to consider specific factors in assessing whether a forfeiture is grossly disproportionate to the gravity of a defendant's offense. *See Nez Perce County Prosecuting Attorney v. Reese,* 142 Idaho 893, 136 P.3d 364, 370 (Ct.App.2006)(recognizing that "*Bajakajian* does not mandate the consideration of any rigid set of factors in deciding whether a punitive fine is grossly disproportionate"). The Supreme Court, however, in determining whether the forfeiture before it was excessive weighed a number of factors, including:

(1) the amount of the forfeiture and its relationship to the authorized penalty (a $357,144 forfeiture for a crime subject to a $5,000 maximum fine); (2) the nature and extent of the criminal activity (a single reporting offense); (3) the relationship between the crime charged and other crimes (none); and (4) the harm caused by the charged crime (again none).

*United States v. Jalaram, Inc.,* 599 F.3d 347, 355–56 (4th Cir.2010) (citing *Bajakajian,* 524 U.S. at 337–39, 118 S.Ct. 2028); *see United States v. Castello,* 611 F.3d 116, 120 (2d Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1533, 179 L.Ed.2d 362 (2011)("Four factors, distilled from *Bajakajian,* guide our analysis: '[1] the essence of the crime of the defendant and its relation to other criminal activity, [2] whether the defendant fit[s] into the class of persons for whom the statute was principally designed, [3] the maximum sentence and fine that could have been imposed, and [4] the nature of the harm caused by the defendant's conduct.'" [*United States v.*] *Varrone,* 554 F.3d [327] at 331 [2d Cir.2009] (applying *Bajakajian* ) (internal quotation marks and brackets omitted).); *United*

*States v. Heldeman,* 402 F.3d 220, 223 (1st Cir.2005)("The case law [citing to *Bajakajian* ] invites us to consider as pertinent factors (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or Sentencing Commission); and (3) the harm caused by the defendant."); *United States v. 300 Blue Heron Farm Lane Chestertown, Maryland, With All Buildings, Appurtenances and Improvements Thereon,* 115 F.Supp.2d 525, 528 (D.Md.2000)("Under *Bajakajian,* lower courts are to consider a number of factors in determining whether a forfeiture is grossly disproportional to the gravity of the offense and therefore unconstitutional. One of the most important is the legislative judgment about the severity of the underlying offense, as evidenced by the penalties authorized for conviction. This requires analysis of the maximums authorized under the Sentencing Guidelines, as well as the statutory penalties. *See Bajakajian,* 118 S.Ct. at 2038–39 & n. 14; [*U.S. v.*] *817 N.E. 29th Dr.,* 175 F.3d [1304] at 1310 [ (11 Cir.1999) ]. Also to be considered are any other related illegal activities, the harm caused by the offense, and possibly whether full forfeiture would deprive the person of his livelihood. *Bajakajian,* 118 S.Ct. at 2037–39 & n. 15."); *In re One Residence at 319 E. Fairgrounds Dr., Fairgrounds Resub Lot 12 Blk 14, Recorded in the Office of the Pima County Recorder in Docket 6969 at Page 938, Including All Buildings, Fixtures, Structures, and Appurtenances Thereto,* 205 Ariz. 403, 71 P.3d 930, 936 (Ct.App.2003)("In its proportionality review in *Bajakajian,* the Court engaged in a case-specific analysis of whether forfeiture of the particular defendant's property was grossly disproportional to that defendant's crime. The Court examined the nature and extent of the defendant's crime, the surrounding circumstances and relationship to other illegal activities, the harm caused, and the maximum sentence and fine under the appropriate sentencing guidelines."); *Smith v. Commonwealth,* 205 S.W.3d 217, 223 (Ky.Ct.App.2006) (" 'The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality.' *Bajakajian,* 524 U.S. at 334, 118 S.Ct. 2028, 141 L.Ed.2d 314.

'Among the factors relevant to this determination [of proportionality] are the gravity of the offense, the potential penalties, the actual sentence, sentences imposed for similar crimes in this and other jurisdictions, and the effect of the forfeiture on innocent third parties.' *Hinkle* [*v. Commonwealth* ], 104 S.W.3d [778] at 782 [Ky.App.Ct.2003] (citations omitted)."); *Commonwealth v. Real Prop. and Improvements Commonly Known as 5444 Spruce Street, Philadelphia, PA,* 574 Pa. 423, 832 A.2d 396, 402 (2003)("The Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and, the harm resulting from the crime charged.") (citing *Bajakajian,* 524 U.S. at 338–39, 118 S.Ct. 2028).

 Following the United States Supreme Court's decision in *Bajakajian* and its progeny, we hold that a forfeiture of real property under West Virginia Code § 60A–7–703(a)(8) (2010) violates the Excessive Fines Clause found in article III, section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution if the amount of the forfeiture is grossly disproportionate to the gravity of a defendant's offense. Factors to be considered in assessing whether the amount of the forfeiture is grossly disproportionate to the gravity of an offense, include: (1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the crime charged and other crimes; and (4) the harm caused by the charged crime. Finally, in the Court holds that a review of a proportionality determination made pursuant to the Excessive Fines Clause of the West Virginia Constitution is de novo.

 Consequently, the circuit court erred in its determination that the forfeiture did not violate the Excessive Fines Clause because that determination was based solely on the culpability of the Petitioner. Because that determination was made without the weighing the amount of the forfeiture with

the gravity of the Petitioner's offense, the Court now undertakes a de novo review of whether the forfeiture in the present matter is grossly disproportionate to the gravity of the Petitioner's offense.

The first factor considered by the Court is the amount of the forfeiture and its relationship to the authorized penalty. The State sought to have the Petitioner's property forfeited under the provisions of WVCFA. *See* W. Va.Code § 60A–7–703(a)(8) (providing that the State can take a person's property when it is used "to commit or to facilitate the commission of a violation of ... [the Uniformed Controlled Substances Act, W. Va. Code §§ 60A–1–101 *et seq.*] punishable by more than one year imprisonment"). The Petitioner originally was charged in state court for violating West Virginia Code § 60A–4–401(a)(i) (2010) of the Uniformed Controlled Substances Act, which provides, in relevant part:

> Except as authorized by this act, it is unlawful for any person to manufacture, deliver, possess with intent to manufacture or deliver a controlled substance.

> Any person who violates this subsection with respect to:

> (i) A controlled substance classified in Schedule I or II, which is a narcotic drug, is guilty of a felony and, upon conviction, may be imprisoned in the State correctional facility for not less than one year nor more than fifteen years, or fined not more than twenty-five thousand dollars, or both[.]

*Id.* Thus, the maximum fine that could be imposed upon the Petitioner for the underlying offense in state court was $25,000. The State, however, maintains that under the federal criminal statute to which the Petitioner pleaded guilty, the Petitioner faced a possible maximum fine of $1,000,000 for the federal charge.[8] Consequently, the State maintains that the value of the Petitioner's property, the amount of the forfeiture, must be compared to a maximum fine of $1,000,000.

We disagree with the State's position. Because the forfeiture action was initiated under state law, the authorized penalty by which the amount of the forfeiture must be compared with is the penalty to which the Petitioner is subject to under West Virginia law, not federal law. *See* W. Va.Code § 60A–7–703(a)(8). Consequently, the maximum fine to which the Petitioner was subjected under West Virginia law was "not more than twenty-five thousand dollars" W. Va.Code § 60A–4–401(a)(i).

Having established the parameter of the authorized penalty, the Court's attempt to weigh the amount of the forfeiture against the authorized penalty is hindered due to the lack of any evidence regarding the value of the Petitioner's property that was sought to be forfeited. The Petitioner's counsel stated to the circuit court during argument that the Petitioner's property was worth $100,000. Additionally, the Petitioner's counsel, in her brief before this Court, has stated that the property is "potentially valued at up to $100,000 proffered by the State[.]" Reference in the record is also made by the Petitioner's counsel to the market value of the property being $75,000. There is, however, no evidence in the record which supports any value of the Petitioner's home. *See Real Property and Improvements Commonly Known as 5444 Spruce Street, Philadelphia, PA,* 832 A.2d at 403 (remanding to determine the value of the real estate sought to be forfeited so that it could be weighed against the seriousness of the defendant's offense); *see also Reese,* 136 P.3d at 371 (remanding for consideration of the value of a motor home and trailer in weighing gravity of offense with amount of forfeiture).

The record, likewise, is devoid of any evidence demonstrating any criminal history of the Petitioner. There was also no evidence that the relevant property was being used for repeated drug activities or drug buys as the sole basis for the forfeiture was the single sale of 4.8 grams of crack cocaine for a total of $600.

It is the lack of evidence submitted below that necessitates a remand to the circuit court. This Court has held that

8. *See* note three *supra.*

[b]ased on the fact that forfeiture is generally disfavored as a legal remedy, we determine that West Virginia Contraband Forfeiture Act, West Virginia Code §§ 60A–7–701 to –707 (1988)(Repl. Vol. 2000 & Supp.2001), is to be liberally construed in favor of the person(s) whose property rights are to be affected, and strictly construed against forfeiture.

Syl. Pt. 4, *Games–Neely v. Real Property, Including a Brick Ranch House and Garage, Commonly Known As 1175 Sam Mason Road Located in Mill Creek District of Berkeley County, WV Map 13, Parcel 32, Libre 237, Folio and Book 635,* 211 W.Va. 236, 565 S.E.2d 358 (2002).

Thus, the Court has stated that "[i]t is the duty of this Court to uphold a forfeiture that is awarded upon a record that contains adequate and substantial evidence demonstrating the propriety of the forfeiture. It is likewise our duty to disallow a forfeiture when there is an insufficiency of such evidence." *State v. Burgraff,* 208 W.Va. 746, 748, 542 S.E.2d 909, 911 (2000).

In attempting to conduct a de novo review, due to the scant record before the Court, we are unable to assess whether the forfeiture of the Petitioner's real property in this case violates the Excessive Fines Clause in article III, section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution West Virginia Constitution. The absence of crucial evidence including the amount of the forfeiture sought by the State necessitates a remand of the case to the circuit court so that an evidentiary hearing can be conducted and a determination made regarding whether the forfeiture of the Petitioner's property is grossly disproportionate to the gravity of a defendant's offense.

Reverse and remanded.

Justice KETCHUM concurs and reserves the right to file a concurring opinion.

KETCHUM, Chief Justice, concurring:

I write to emphasize that the excessive fine factors listed in the majority's opinion are not an exclusive list; there are many other factors that a court may consider in assessing whether a property forfeiture should be allowed. For example, the defendant may assert a "legitimate sources defense," *i.e.,* may prove that the seized property had an independent, innocent source that is not traceable to criminal activity. An excellent primer on the forfeiture process that a prosecutor should follow—a primer that details a host of applicable defenses—is Joseph Cramer, "Civilizing Criminal Sanctions—A Practical Analysis of Civil Asset Forfeiture under the West Virginia Contraband Forfeiture Act," 112 W.Va.L.Rev. 991 (2010).

I am concerned that our Contraband Forfeiture Act may be unconstitutional. The Act provides that ten percent of the forfeiture proceeds must be given to the prosecuting attorney's office that filed the forfeiture proceeding. The balance is placed in a law enforcement investigation fund to be used by the law enforcement agency that seized the forfeited property. However, Article XII, Section 5 of the West Virginia *Constitution* provides that "the net proceeds of all forfeitures" are to go to support free schools. *See* Cramer, *supra* at 1014, 1018.

In view of the foregoing concerns, I respectfully concur.