No. 13-0744 -    *Roger F. Holt v. West Virginia-American Water Company*

**June 12, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Chief Justice, dissenting:

Had Mr. Holt merely sought to challenge, through his lawsuit in the case *sub judice*, West Virginia-American Water Company's ("WVAW") rates or late charges on his regular monthly water bill that were not related to the series of water line leaks recounted in the majority's opinion, I would wholeheartedly agree with the majority's decision herein. However, in its zeal to quash Mr. Holt's complaint, the majority of the Court has failed to appreciate the true import of Mr. Holt's claims, which challenge not only WVAW's imposition of late charges upon water usage attributable to WVAW's own faulty meter and efforts to collect the same, but also WVAW's termination of Mr. Holt's water service for his failure to pay such late charges in *direct contravention* of the order of the Public Service Commission of West Virginia ("PSC") specifically *prohibiting* WVAW from terminating Mr. Holt's water service during the pendency of the underlying proceedings as long as he continued to timely pay his customary monthly water bills. The parties do not dispute that, throughout the pendency of the PSC proceedings, Mr. Holt continued to pay his monthly water bills in an amount commensurate with his customary water usage prior to the occurrence of the various leaks in his water line. Through his lawsuit against WVAW in the case *sub judice*, Mr. Holt simply seeks recompense for the damages he incurred as a result

1

of WVAW's blatant disregard for the PSC's order and its use of allegedly unfair trade practices in the handling of his account. Because the language of W. Va. Code § 46A-1-105(a)(3) specifically does *not* preclude Mr. Holt's cause of action against WVAW under the facts of this case, I adamantly dissent.

### A. *The Majority Misapplied the Plain Language of W. Va. Code § 46A-1-105(a)(3)*

To uphold its dismissal of Mr. Holt's lawsuit against WVAW, the majority determined that W. Va. Code § 46A-1-105(a)(3) (2000) (Repl. Vol. 2006) applies to preclude the claims he has asserted therein. However, an examination of the legislative intent underlying the West Virginia Consumer Credit and Protection Act and a consideration of how other courts have interpreted this statutory language reveal the flaws in the majority's interpretation and resultant application of this statute.

When this Court is faced with a matter of statutory construction, we routinely look to the intent of the Legislature in promulgating the provision at issue as an aid to understanding the meaning of the challenged language. *See generally* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). With regard to the statutory provision interpreted by the majority in this case, W. Va. Code § 46A-1-105(a)(3) is part of the West Virginia Consumer Credit and Protection Act

("WVCCPA"). In enacting the WVCCPA, the Legislature specifically adopted W. Va. Code § 46A-6-101 (1974) (Repl. Vol. 2006), which is entitled "Legislative declarations; statutory construction" and directs, in full, as follows:

> (1) The legislature hereby declares that the purpose of this article is to complement the body of federal law governing unfair competition and unfair, deceptive and fraudulent acts or practices in order to protect the public and foster fair and honest competition. *It is the intent of the legislature that, in construing this article, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. To this end, this article shall be liberally construed so that its beneficial purposes may be served.*

> (2) It is, however, the further intent of the legislature that this article shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor shall this article be construed to repeal by implication the provisions of articles eleven [§§ 47-11-1 et seq., repealed], eleven-a [§§ 47-11A-1 et seq.] and eleven-B [§§ 47-11B-1 et seq.], chapter forty-seven of this Code.

(Emphasis added). Thus, it is apparent from this express statement of legislative intent that (a) this Court has been instructed to look to similar federal statutes and court decisions for guidance in construing the provisions of the WVCCPA and (b) the statutes comprising the WVCCPA are to be "liberally construed so that its beneficial purposes may be served." W. Va. Code § 46A-6-101(1).

The statutory language at the center of the instant controversy is part of the

3

Legislature's recognized exceptions to claims covered by the WVCCPA. W. Va. Code § 46A-1-105(a)(3) (2000) (Repl. Vol. 2006) provides as follows:

> (a) This chapter does not apply to:
>
> . . . .
>
> (3) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]

Until the majority's opinion herein, this Court has never before interpreted this particular statutory provision. Thus, pursuant to W. Va. Code § 46A-6-101(1), the majority of "the [C]ourt[] [should have] be[en] guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters."[1] Had the majority heeded this express statement of legislative intention, it would have appreciated that the construction it has afforded to W. Va. Code § 46A-1-105(a)(3) is contrary to the interpretation of similar federal language and does not effectuate the Legislature's desire that the provisions of the WVCCPA "be liberally construed so that its beneficial purposes may be served." W. Va. Code § 46A-6-101(1).

---

[1]Looking to the courts of other jurisdictions for guidance when resolving questions of law is an approach often employed by this Court. *See, e.g.*, *Kenney v. Liston*, ___ W. Va. ___, ___ S.E.2d ___ (No. 13-0427 June 4, 2014); *State ex rel. Thompson v. Pomponio*, ___ W. Va. ___, 757 S.E.2d 636 (2014); *Dean v. State*, 230 W. Va. 40, 736 S.E.2d 40 (2012); *Motto v. CSX Transp., Inc.*, 220 W. Va. 412, 647 S.E.2d 848 (2007).

Using virtually identical language, Congress has enacted 15 U.S.C.A. § 1603(4) (2010), which operates to exclude from the federal Truth in Lending Act substantially similar matters as those addressed in the exclusions to the WVCCPA set forth in W. Va. Code § 46A-1-105(a)(3). The language of 15 U.S.C.A. § 1603(4) provides:

> This subchapter [of the federal Truth in Lending Act] does not apply to the following:
>
> . . . .
>
> (4) Transactions under public utility tariffs, if the Bureau determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment.[2]

---

[2]In addition to the federal government, several other states have adopted exclusionary language similar to that contained in W. Va. Code § 46A-1-105(a)(3). *See* Colo. Rev. Stat. Ann. § 5-1-202(1)(c) (West 2012) ("This code does not apply to: . . . (c) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]"); Ind. Code Ann. § 24-4.5-1-202(b)(3) (West 2012) ("This article does not apply to the following: . . . (3) Transactions under public utility, municipal utility, or common carrier tariffs, if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment."); Kan. Stat. Ann. § 16a-1-202(3) (West 1973) ("K.S.A. 16a-1-101 through 16a-6-414 do not apply to . . . (3) transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]"); La. Rev. Stat. Ann. § 9:3512(3) (2006) ("This law does not apply to: . . . (3) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates, approves, or consents to the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment."); Okla. Stat. Ann. tit. 14A, § 1-202(3) (West 1982) ("This act does not apply to . . . (3) transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment and any

(continued...)

(Footnote added).  While several federal courts have applied this statute in cases concerning allegedly excessive or erroneous charges, none of these tribunals have considered, *or applied*, it in the context of claims such as those asserted by Mr. Holt claiming that a public utility, *i.e.*, WVAW, has violated a direct order of its regulatory body, *i.e.*, the PSC.  *See Aronson v. Peoples Natural Gas Co.*, 180 F.3d 558 (3d Cir. 1999) (applying 15 U.S.C.A. § 1603(4) to bar public utility customer's claims challenging natural gas company's billing methods whereby calculation of late payment charge and interest assessed thereon were not clear from customer's monthly natural gas bill); *Aronson v. Peoples Natural Gas Co.*, 180 F.3d 558 (3d Cir. 1999) (same); *Gattermann v. Rhodes*, 898 F.2d 145 (4th Cir. 1990) (per curiam) (unpublished op.) (applying 15 U.S.C.A. § 1603(4) to dismiss public utility customer's complaint challenging termination of her utility service while parties were determining whether customer owed monies on previous account with same public utility); *Monchino v. PSE & G, Co.*, No. 11-1733 ES, 2012 WL 1988619 (D.N.J. June 4, 2012) (applying 15

---

[2](...continued)
discount allowed for early payment[.]"); S.C. Code Ann. § 37-1-202(3) (2005) ("Except as otherwise provided, this title does not apply to: . . . (3) Transactions under public utility, municipal utility or common carrier tariffs if a subdivision or agency of this State or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment [.]"); Wis. Stat. Ann. § 421.202(3) (West 2007) ("Chapters 421 to 427 do not apply to any of the following: . . . (3) Charges for delayed payment and any discount allowed for early payment in transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates such charges or discounts, or if such charges or discounts are made in connection with the furnishing of electric service by an electric cooperative organized and operating on a nonprofit basis under ch. 185.").

U.S.C.A. § 1603(4) to dismiss complaint alleging public utility failed to remove charges erroneously billed to customer's account); *Huegel v. City of Easton*, No. 00-CV-5077, 2003 WL 22428435 (E.D. Pa. May 13, 2003) (applying 15 U.S.C.A. § 1603(4) to grant city's motion for summary judgment on public utility customers' complaint claiming city had failed to inform delinquent account holders of amount of interest and other charges due under repayment plans); *King v. Town of Waynesville*, No. 1:02CV55, 2003 WL 23354657 (W.D.N.C. Apr. 14, 2003) (applying 15 U.S.C.A. § 1603(4) to grant city's motion for summary judgment as to public utility customer's complaint that city had charged late fees without disclosing the same and had failed to properly credit customer's account); *Munson v. Orrin E. Thompson Homes, Inc.*, 395 F. Supp. 152 (D. Minn. 1974) (applying 15 U.S.C.A. § 1603(4) to grant public utility's motion for summary judgment regarding public utility customers' claims challenging surcharges added to customers' monthly utility bills for construction of underground utility distribution system).[3]   *Cf. Pollice v. National Tax*

---

[3]Neither have other states who have interpreted their statutory exclusionary language considered claims such as those raised by Mr. Holt in the instant proceeding wherein he seeks damages for a public utility's direct violation of an order issued by its regulatory agency. *See, e.g.*, *Jones v. Kansas Gas & Elec. Co.*, 222 Kan. 390, 565 P.2d 597 (1977) (determining public utility exclusion applied to claims regarding late payment charges imposed upon public utility bill); *State of Louisiana ex rel. Guste v. Council of City of New Orleans*, 9 P.U.R.4th 353, 309 So. 2d 290 (La. 1975) (concluding that public utility's adoption and imposition of late payment provisions which increased customers' monthly bills were exempted from regulation under Louisiana's consumer protection laws); *Grein v. Hawkins*, 295 So. 2d 219 (La. Ct. App. 1974) (finding public utility exemption of Louisiana Consumer Credit Protection Act applied so as to bar customer's challenge to sanitary corporation's 60% monthly rate increase where sanitary corporation had been placed under

(continued...)

*Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) (refusing to apply 15 U.S.C.A. § 1603(4) to bar claims against assignee of city's and public utilities' claims attempting to collect upon delinquent public utility customers' accounts). Rather, all of the federal cases addressing a public utility customer's claims against a public utility, and finding them to be excluded by 15 U.S.C.A. § 1603(4), have involved complaints about the imposition of late charges, the excessiveness of rates, or other routine billing practices. Simply stated, *no* federal cases have considered a public utility's callous disregard of an order issued by its governing body.

The majority's opinion focuses solely upon the fact that WVAW has filed a tariff with the PSC, which contains a listing of the utility's rates, charges, and general rules and regulations, and then concludes that all of Mr. Holt's claims arise from transactions related to said tariff. I do not dispute that had Mr. Holt's complaint focused solely on WVAW's routine billing practices and imposition of late fees for nonpayment of his customary water bill in the absence of the leak scenario involved in this case, such claims likely would be precluded by W. Va. Code § 46A-1-105(a)(3). However, those are not

---

[3](...continued)
Public Service Commission's control and PSC's operation of said sanitary corporation provided *prima facie* evidence of regulation of its charges by a state regulatory body); *Dalton v. City of Tulsa*, 1977 OK 25, 560 P.2d 955 (1977) (ruling that public utility customers could not maintain cause of action against city providing such services under either Oklahoma Consumer Credit Act or federal Consumer Protection Act because city utility board had authority to establish rates for city water services, and city board of commissioners had approved 5% late penalty).

8

allegations set forth in Mr. Holt's complaint. Rather, Mr. Holt seeks redress for WVAW's flagrant violation of the PSC's order that specifically *prohibited* WVAW from terminating his water service during the pendency of the underlying proceedings. Such allegations are wholly unrelated to a public utility's rates, charges, tariffs, or routine billing practices and are fully suggestive of a public utility's pattern of unlawful conduct.

Shortly after Mr. Holt filed his administrative complaint with the PSC, the PSC issued a temporary order on April 19, 2010, specifically ordering, in pertinent part, as follows:

> IT IS, THEREFORE, ORDERED that, while this case is pending final resolution, West Virginia-American Water Company not terminate public utility water service to the Complainant, Roger F. Holt, and to continue to provide water service to the Complainant, provided that the Complainant pays each of his bills for current public water utility service on or before the due dates stated on each billing.

Despite such directives prohibiting WVAW from turning off Mr. Holt's water service if Mr. Holt continued to make timely payments of his customary monthly water charges, and Mr. Holt's timely monthly payments during this period, WVAW nevertheless terminated Mr. Holt's water service in October 2010. In his circuit court complaint alleging violations of the WVCCPA, Mr. Holt recounted WVAW's actions in this regard:

> [West Virginia-]American Water engaged in the following unfair or deceptive acts or practices against the plaintiff [Mr. Holt]:

9

. . . .

> Threatening to terminate Plaintiff's [Mr. Holt's] water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief via letters dated October 4, 2010 and October 15, 2010, with each letter constituting a discrete violation.

> Terminating Plaintiff's [Mr. Holt's] water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief.

Thus, it is evident that these claims asserted by Mr. Holt do not concern tariffs, rates, or charges within the contemplation of W. Va. Code § 46A-1-105(a)(3). Rather, Mr. Holt seeks to hold WVAW accountable for its flagrant violation of an express order issued by WVAW's own regulatory agency–the PSC. As such, W. Va. Code § 46A-1-105(a)(3) should be "liberally construed so that its beneficial purposes may be served," W. Va. Code § 46A-6-101(1), and not applied to bar Mr. Holt's claims.

I do not mean to imply, however, that damages incurred as the result of any violation of a court's order routinely may be pursued under the WVCCPA. Rather, I simply wish to point out that Mr. Holt's allegations regarding WVAW's violation of the PSC's order are *not* the type of "[t]ransactions under public utility . . . tariffs" contemplated by the exclusionary language of W. Va. Code § 46A-1-105(a)(3). As such, Mr. Holt pled claims sufficient to survive WVAW's motion to dismiss for failure to state a claim upon which relief may be granted. *See generally John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 606, 245 S.E.2d 157, 159 (1978) ("In view of the liberal policy of the rules of

pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted. The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it."). Because the majority has reached a contrary conclusion in its decision of this case, I respectfully dissent.